47 A.3d 669

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. BARRINGTON MCDONALD, DEFENDANT–
APPELLANT.

Argued March 1, 2012—Decided July 23, 2012.

8

*Patricia A. Nichols,* Assistant Deputy Public Defender argued the cause for appellant (*Joseph E. Krakora,* Public Defender, attorney).

*Jack J. Lipari,* Chief Assistant Prosecutor, argued the cause for respondent (*Theodore F.L. Housel,* Atlantic County Prosecutor, attorney).

Justice PATTERSON delivered the opinion of the Court.

The Court considers defendant Barrington McDonald's appeal from the trial court's denial of his motion to vacate his plea of guilty to three offenses arising from an automobile accident. Defendant, driving under the influence of alcohol, struck and seriously injured a pedestrian. He was indicted for second-degree assault by automobile while driving in a school zone, *N.J.S.A.* 2C:12–1(c)(3)(a) (assault by auto in a school zone), and was issued summonses for several motor vehicle offenses.

Several months after the accident, defendant entered into a plea agreement with the State. The plea agreement called for defendant to plead guilty to second-degree assault by auto in a school zone, *N.J.S.A.* 2C:12–1(c)(3)(a), driving while intoxicated (DWI), *N.J.S.A.* 39:4–50, and driving with a suspended license, *N.J.S.A.* 39:3–40. The prosecutor agreed to recommend a single, three-year sentence for all three offenses. The same day, defendant pled guilty to the three offenses, and the trial court found that he had knowingly, intelligently and voluntarily waived his right to a jury trial.

Prior to sentencing, defendant moved to withdraw his guilty plea, claiming that he had not entered into his plea agreement knowingly, intelligently or voluntarily. He challenged the State's contention that his motor vehicle accident occurred within 1,000 feet of school property, as required by *N.J.S.A.* 2C:12–1(c)(3)(a). The trial court denied the motion, and sentenced defendant to a term of imprisonment, a license suspension and fines for the three offenses.

Defendant appealed, contending that the trial court should have permitted him to withdraw his guilty plea. Defendant claimed that he did not violate *N.J.S.A.* 2C:12–1(c)(3)(a), arguing that the parochial school at issue was not "school property" for purposes of *N.J.S.A.* 2C:12–1(c)(3)(a), that his accident did not occur within 1,000 feet of "school property used for school purposes" within the meaning of the statute, and that the statute should not apply to an accident that occurred in the middle of the night, when no children were present. Defendant also challenged his guilty plea and sentence on various other grounds. An Appellate Division panel affirmed defendant's conviction and sentence for the school-zone offense, merged defendant's DWI conviction into his conviction for assault by auto in a school zone, remanded for a determination of whether defendant should be permitted to withdraw his guilty plea on the offense of driving with a suspended license, and corrected minor sentencing errors. We granted defendant's petition for certification.

Applying the analysis of *State v. Slater*, 198 *N.J.* 145, 966 *A.*2d 461 (2009), we hold that defendant has not demonstrated a colorable claim of innocence. Because his accident occurred within 1,000 feet of a school property used for school purposes that meets the standard of *N.J.S.A.* 2C:12–1(c)(3)(a), and because the statute clearly applies at all times of the day and night, defendant cannot present a colorable claim that he did not commit the offense of assault by auto in a school zone.

Defendant similarly fails to satisfy the second prong of the *Slater* test, because he makes no showing that his defense to the assault by auto in a school zone offense could not have been asserted prior to his guilty plea, and cannot demonstrate a meritorious basis for his attempt to revoke his plea. The third *Slater* factor—the existence of a plea bargain—weighs against defendant's motion to withdraw his plea, since that plea was the product of a negotiated plea agreement between defendant and the State. Application of the fourth *Slater* factor, the prospect of unfair prejudice to the State and unfair advantage to the accused, supports the motion to withdraw.

Balancing these factors in accordance with *Slater*, we hold that the interests of justice do not warrant an order permitting defendant to withdraw his guilty plea, and that the trial court properly denied defendant's motion to withdraw. We further reject defendant's additional contentions with respect to the validity of his guilty plea and the sentence imposed by the trial court, and we decline to consider defendant's assertion of ineffective assistance of counsel on the record before us. We therefore affirm.

## I.

Defendant's accident took place at 2:18 a.m. on January 14, 2007, on Pacific Avenue in Atlantic City. Defendant was traveling eastbound when his vehicle struck a pedestrian, Robert Fields, who was walking from the Tropicana Casino's employee entrance to its front entrance. According to defendant, Fields walked halfway across the street and then backed up from the center of

the road into defendant's lane. The impact, recorded by casino security cameras, launched Fields eighty-nine feet to the sidewalk of the westbound side of Pacific Avenue. The police investigation concluded that defendant was traveling in excess of the twenty-five mile-per-hour speed limit at the moment of impact. Defendant's blood alcohol concentration was recorded at .19% shortly after the accident. The police determined that defendant's New Jersey license had been suspended in 1994, and was never restored. Because defendant's North Carolina license had expired more than a year before the accident, he had no valid driver's license when his vehicle struck Fields. He was arrested at the scene. Fields was taken to a local hospital, where he was found to have sustained multiple fractures and head trauma, requiring a week-long hospitalization.

The accident occurred near Our Lady Star of the Sea Regional School (the School), a parochial elementary school operated by the parish of Our Lady Star of the Sea Church in Atlantic City. The School, along with the parish church, is part of a property owned by Our Lady Star of the Sea Church. The entire facility is designated in Atlantic City municipal maps as Block 274, Lot 43. The record reflects no lease agreement between the School and the church governing the School's use of the church-owned land and facilities.

## II.

Following his arrest, defendant was indicted for second-degree assault by auto in a school zone, *N.J.S.A.* 2C:12–1(c)(3)(a). He was also issued summonses for DWI, *N.J.S.A.* 39:4–50, driving with a suspended license, *N.J.S.A.* 39:3–40, DWI in a school zone, *N.J.S.A.* 39:4–50(g)(1), reckless driving, *N.J.S.A.* 39:4–96, careless driving due to speed, *N.J.S.A.* 39:4–97, and unlicensed driving, *N.J.S.A.* 39:3–10.

Defendant, represented by counsel, advised the trial court at a May 7, 2007 bail hearing that he sought bail so that he could discuss the case with a different attorney. Notwithstanding that

statement, while he was still represented by his original counsel, defendant entered into a plea agreement with the prosecutor on May 21, 2007. The plea agreement provided that defendant would plead guilty to second-degree assault by auto in a school zone, DWI and driving with a suspended license. It also provided that he would be sentenced as if he had pled to a third-degree offense, and that the State's recommended sentence would be a three-year term in state prison.

The plea agreement was presented to the trial court at a hearing held the same day. Defendant advised the trial court that he wished to plead guilty to the assault by auto in a school zone, DWI and suspended license charges. Asked whether he was guilty of driving a vehicle recklessly while intoxicated "and also within a thousand feet of school property and caused serious bodily injury to Robert Fields," defendant answered "[y]es, I am." The prosecutor followed up with an additional colloquy on the school zone issue:

> PROSECUTOR: And, sir, you don't dispute it was within a thousand feet of Our Lady Star of the Sea School, where the accident occurred?
>
> DEFENDANT: I didn't see it, but I might have missed it, okay.

The trial judge then commented that he was "satisfied the defendant has knowingly, intelligently and voluntarily waived his right to a trial by jury," and stated that based on defendant's testimony, "he is guilty, his pleas are accepted." Released on his own recognizance pending sentencing, defendant retained new counsel, who sought and obtained a one-week continuance of his sentencing.

On July 27, 2007, defense counsel raised for the first time the possibility that defendant would attempt to withdraw his guilty plea. Between that hearing and the next hearing before the trial court on August 10, 2007, the State produced a map as evidence that defendant's accident had occurred within 1,000 feet of school property. Defendant obtained two more continuances to investigate his claim that his accident had occurred outside of the 1,000–foot school zone for purposes of *N.J.S.A.* 2C:12–1(c)(3)(a).

On October 19, 2007, pursuant to *Rule* 3:21–1, defendant filed his motion to withdraw his guilty plea. He contended that prior to his plea, his former attorney had dismissed his concerns about the need for further investigation and discovery regarding the parameters of the 1,000–foot zone around the School. Defendant claimed that when he pled guilty to the school-zone offense, he had not known the exact distance between the site of his accident and the School, and that his plea was not entered into knowingly or with an adequate factual basis.

The trial court denied defendant's motion to withdraw his guilty plea, holding that the plea was grounded on an adequate factual basis, that it was made knowingly, intelligently and voluntarily, and that defendant exhibited "buyer's remorse." The trial court also rejected defendant's contention that at the time of his guilty plea, he had not been advised of the potential penalties for his DWI and driving with a suspended license offenses. The trial court sentenced defendant to a three-year term of imprisonment, with a one-year license suspension, for the assault by auto in a school zone charge. For the DWI conviction, the trial court imposed a ninety-day prison term, consecutive to the three-year term, and for the driving while suspended conviction, it sentenced defendant to an additional consecutive sixty days in prison. The court imposed fines and other penalties for the motor vehicle offenses.

Defendant appealed. He initially sought a remand to supplement the record with information regarding the nature and dimensions of the school zone for purposes of *N.J.S.A.* 2C:12–1(c)(3)(a). Consulting with an expert, defendant's new counsel produced a new map of the relevant section of Atlantic City. Defense counsel certified to the Appellate Division panel that a 1,000–foot radius around the site at which defendant's vehicle struck the pedestrian—the middle of the block on Pacific Avenue between Iowa Avenue and Brighton Avenue—included part of the rectory and front garden area of the complex owned and operated by the church, but excluded the School itself, its parking lot and the

remainder of the property. Defendant thus contended that his offense was committed within 1,000 feet of part of the parish-owned property on which the School sits, but not within 1,000 feet of the school building itself, and argued that he did not therefore violate *N.J.S.A.* 2C:12–1(c)(3)(a). The Appellate Division panel declined to remand the case but permitted defendant to supplement the record in his appellate papers.

Applying this Court's analysis in *Slater, supra,* 198 *N.J.* at 158–62, 966 *A.*2d 461, the Appellate Division panel affirmed the trial court's denial of defendant's motion to withdraw his guilty plea. Relying upon legislative history and case law with respect to *N.J.S.A.* 2C:35–7, which governs controlled dangerous substance (CDS) offenses in school zones, the Appellate Division panel held that defendant had not established a colorable claim of innocence. The panel concluded that defendant had not identified a compelling reason to withdraw his plea, and that a sufficient factual basis for the plea had been provided to the trial court. However, the panel merged the DWI conviction into the second-degree assault by auto conviction, and ordered a limited remand for consideration of whether defendant should be able to withdraw his guilty plea to driving with a suspended license.

We granted defendant's petition for certification. *State v. McDonald,* 207 *N.J.* 64, 22 *A.*3d 973 (2011).

### III.

Defendant urges the Court to vacate his guilty plea on the ground that he did not enter into it knowingly, and that it lacked a factual foundation. Defendant contends that the distance between the site of his accident and the School gives rise to a colorable claim of innocence under *Slater* with respect to the most serious offense charged, second-degree assault by auto, *N.J.S.A.* 2C:12–1(c)(3)(a).

Defendant argues that his intoxication was insufficient to support a factual basis for recklessness. Defendant further asserts that the Appellate Division's remand to the trial court for recon-

sideration of defendant's motion to withdraw his guilty plea compels a determination that the entire guilty plea should be vacated pursuant to *Rule* 3:9–3. Defendant disputes the existence of a factual basis for his guilty plea to the offense of driving with a suspended license. Finally, he contends that he had ineffective assistance of counsel when he pled guilty before the trial court.

The State argues that there was a sufficient factual foundation for defendant's guilty plea to second-degree assault by auto in a school zone in violation of *N.J.S.A.* 2C:12–1(c)(3)(a). It claims that the School clearly qualifies as "school property used for school purposes" under *N.J.S.A.* 2C:12–1(c)(3)(a) notwithstanding its status as a parochial school, because the statute is not limited to facilities owned or leased by public schools. The State further contends that the entire property on which the school is located constitutes "school property" within the meaning of *N.J.S.A.* 2C:12–1(c)(3)(a), and that the statute applies at all times of the day and night, not only when children are present.

The State also argues that there was a factual basis for a finding of recklessness given defendant's blood alcohol content and his vehicle's speed at the time of the accident. Conceding that the Appellate Division was correct to merge the DWI conviction into the second-degree assault by auto in a school zone conviction, and that defendant was not advised of the penal consequences of his guilty plea to driving with a suspended license, the State contends that the Appellate Division properly resolved these errors. The State maintains that there was a factual basis for defendant's guilty plea for driving with a suspended license, and disputes defendant's claim that his trial counsel was ineffective.

IV.

A defendant who elects to plead guilty to a criminal offense gives up fundamental constitutional rights, including the right to be presumed innocent until determined guilty beyond a reasonable doubt, the guarantee against self-incrimination and the right to confront one's accusers. *Slater, supra,* 198 *N.J.* at 154, 966 *A.*2d

461 (quoting *State v. Smullen,* 118 *N.J.* 408, 414, 571 *A.2d* 1305 (1990)). To ensure that those rights are not relinquished without careful deliberation, *Rule* 3:9–2 requires a trial court to question the defendant—and permits the court to question other witnesses—before accepting a plea of guilty. The trial court must be satisfied "that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea." *Ibid.* In the absence of this showing, the trial court must reject the guilty plea. *Ibid.*

In *Slater,* we established a four-pronged standard for determining motions to withdraw a guilty plea:

> We hold that trial judges are to consider and balance four factors in evaluating motions to withdraw a guilty plea: (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused. [*Slater, supra,* 198 *N.J.* at 157–58, 966 *A.2d* 461 (citing *United States v. Jones,* 336 *F.*3d 245, 252 (3d Cir.2003)).] [1]

We noted the different burdens that attach to pre-sentence and post-sentence motions to withdraw a plea; "pre-sentence motions to withdraw a plea are governed by the 'interest of justice' standard in *Rule* 3:9–3(e), while post-sentence motions are subject to the 'manifest injustice' standard in *Rule* 3:21–1." *Id.* at 158, 966 *A.2d* 461. Here, given the timing of defendant's attempt to withdraw his plea, the *Slater* factors are evaluated under the "interests of justice" standard of *Rule* 3:9–3. No single *Slater* factor is dispositive; "if one is missing, that does not automatically

---

[1] *Slater* was decided on February 4, 2009, well after defendant's motion to withdraw his guilty plea. *Slater,* "by its terms, made clear that its holding did not represent a new rule of law," instead distilling " 'common principles from [the earlier defined] law in an effort to help trial courts assess plea withdrawal motions.' " *State v. Hayes,* 205 *N.J.* 522, 541 n.7, 16 *A.3d* 1028 (2011) (quoting *Slater, supra,* 198 *N.J.* at 157, 966 *A.2d* 461); *see also State v. Dock,* 205 *N.J.* 237, 254–55, 15 *A.3d* 1 (2011). *Slater* thus governs appellate review of the plea withdrawal motion in this case.

disqualify or dictate relief." *Slater, supra*, 198 *N.J.* at 162, 966 *A.*2d 461; *see also State v. Mustaro*, 411 *N.J.Super.* 91, 100, 984 *A.*2d 450 (App.Div.2009).

## V.

The first of the *Slater* factors focuses the trial court on the merits of the defense that would be presented if the defendant were to be permitted to withdraw his plea and proceed to trial. Defendant must "present specific, credible facts and, where possible, point to facts in the record that buttress [his] claim." *Slater, supra*, 198 *N.J.* at 158, 966 *A.*2d 461. We cautioned that "[c]ourts are not to conduct a mini-trial at this juncture ... [t]hey should simply consider whether a defendant's assertion of innocence is more than a blanket, bald statement and rests instead on particular, plausible facts." *Id.* at 159, 966 *A.*2d 461.

Accordingly, we must determine whether defendant has presented facts that would support his assertion that he did not violate *N.J.S.A.* 2C:12–1(c)(3)(a). The statute provides that assault by auto is a second-degree crime "when serious bodily injury results" from defendant's operation of a vehicle while in violation of *N.J.S.A.* 39:4–50 (prohibiting driving while intoxicated) "on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property." *N.J.S.A.* 2C:12–1(c)(3) to (c)(3)(a). It is not a defense to a violation of *N.J.S.A.* 2C:12–1(c)(3)(a) that the defendant "was unaware that the prohibited conduct took place while on or within 1,000 feet of any school property [or] that no juveniles were present on the school property" at the time of the offense. *N.J.S.A.* 2C:12–1(c)(3).

On appeal, defendant does not contest his blood-alcohol reading, his role in the accident or the seriousness of the victim's injury. Instead, he contends that the church-owned facilities within 1,000 feet of the location of his accident do not constitute "school property" within the meaning of *N.J.S.A.* 2C:12–1(c)(3)(a). Defendant argues that even if the School's building constitutes "school

property," that designation is limited to a portion of the parcel that was more than 1,000 feet from the site of the accident at issue here. He claims that in any event, the statute should apply only during hours when children and crossing guards are present.

We construe the terms "school property" and "school purposes" as they are used in *N.J.S.A.* 2C:12–1(c)(3)(a), using recognized principles of statutory construction. The Court's objective is to "determine and effectuate the Legislature's intent." *Bosland v. Warnock Dodge, Inc.,* 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009). In *N.J.S.A.* 1:1–1, the Legislature directed that its statutory words and phrases "be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." Accordingly, to the extent possible, we determine the meaning of statutes by looking to the Legislature's plain language. *State v. Gandhi,* 201 *N.J.* 161, 176–77, 989 *A.*2d 256 (2010); *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). If a statute's language is unambiguous, then the Court's "interpretive process is over." *Gandhi, supra,* 201 *N.J.* at 177, 989 *A.*2d 256 (quotation omitted); *see also DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039.

If the plain language of the statute is ambiguous, then the Court must examine secondary sources such as legislative history. *Bosland, supra,* 197 *N.J.* at 553, 964 *A.*2d 741. Under the "doctrine of lenity," if an analysis of statutory language, legislative history and other secondary sources fails to resolve a statutory ambiguity with respect to a criminal statute, that ambiguity is resolved in favor of the defendant. *State v. Gelman,* 195 *N.J.* 475, 482, 950 *A.*2d 879 (2008) (citing *United States v. Bass,* 404 *U.S.* 336, 348, 92 *S.Ct.* 515, 523, 30 *L.Ed.*2d 488, 497 (1971)).

The statute at issue, *N.J.S.A.* 2C:12–1(c)(3)(a), was named "Filomena's Law" after Filomena Coppola, "a well-known and popular crossing guard who was ... struck and killed by an alleged drunk driver while protecting two eight-year old girls at a crossing...."

*Statement to Assembly Bill No. 1821* at 14 (Mar. 16, 1998). The Legislature intended the statute to make the streets near schools safer for students and crossing guards. *Ibid.* The law substantially tracks the language of *N.J.S.A.* 2C:35–7, which provides for more severe penalties for certain CDS offenses committed "while on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property...." *N.J.S.A.* 2C:35–7 is intended to create "a permanent, 24–hour drug safety zone around schools, in recognition that children routinely congregate on school property and school yards, before and after the normal school day, and during summer recess and other vacation periods." *State v. Ivory,* 124 *N.J.* 582, 587, 592 *A.*2d 205 (1991) (citation omitted).

In this setting, we consider each of defendant's contentions regarding the scope of *N.J.S.A.* 2C:12–1(c)(3)(a). We first determine whether the School, part of a complex of buildings and land owned by Our Lady Star of the Sea Church, constitutes "school property" for purposes of *N.J.S.A.* 2C:12–1(c)(3)(a). Consistent with the statute's goal of protecting children and the adults who ensure their safety as they arrive at and depart from school, the plain language of *N.J.S.A.* 2C:12–1(c)(3)(a) does not limit "school property" to public schools. As we recently held in *State v. Shelley,* construing the analogous language of the CDS school zone statute, *N.J.S.A.* 2C:35–7, " '[i]t does not matter for purposes [of the statute] whether the school is public, private or parochial.' " 205 *N.J.* 320, 327, 15 *A.*3d 818 (2011) (quoting *Official Commentary to the Comprehensive Drug Reform Act of 1986 (Laws 1987, Chapter 106),* 9 *Crim. Just. Q.* 149, 157 (Fall 1987) [hereinafter *Official Commentary* ] ).

Moreover, consistent with the statute's objective to ensure student safety, the Legislature did not limit *N.J.S.A.* 2C:12–1(c)(3)(a) to school property owned or leased by any specific category of educational institution. As we held in *Ivory, supra,* 124 *N.J.* at 590, 592 *A.*2d 205, construing *N.J.S.A.* 2C:35–7 in the

setting of a CDS offense within 1,000 feet of an athletic field owned by a school board and leased to both public and parochial schools, "school property" is property "owned by or leased to a primary- or secondary education entity." [2]  *See also State v. Belnavis,* 311 *N.J.Super.* 195, 199, 709 *A.2d* 805 (App.Div.1998) (distinguishing *Ivory,* and holding that publicly-owned local park used "from time to time by a school" was not "school property" for purposes of *N.J.S.A.* 2C:35–7); *State v. Baez,* 238 *N.J.Super.* 93, 98, 569 *A.2d* 268 (App.Div.) (noting that courts construing *N.J.S.A.* 2C:35–7 should not focus on manner in which elementary or secondary school's board holds title to property, given the statutory objective to protect students in their educational environment), *certif. denied,* 121 *N.J.* 644, 583 *A.2d* 335 (1990). In its effort to protect students in school and in transit, the Legislature has not defined "school property" for purposes of *N.J.S.A.* 2C:12–1(c)(3)(a) to exclude elementary or secondary schools because they are not owned or leased by a school board.

Here, the parish church that owns the property and operates the school is an elementary education entity within the meaning of the statute. *See Ivory, supra,* 124 *N.J.* at 591, 592 *A.2d* 205. The Legislature clearly intended to protect children and crossing guards in all elementary and secondary schools from the threat posed by drivers under the influence of alcohol. Under the plain language of *N.J.S.A.* 2C:12–1(c)(3)(a), the School at issue in this case constitutes "school property."

█ We next address the question of whether all or only a portion of the land at issue should be considered "school property used for school purposes" under *N.J.S.A.* 2C:12–1(c)(3)(a). Defendant's offense took place within 1,000 feet of a portion of the property on which the School, the parish church and other buildings are found, but not within 1,000 feet of the School building

---

[2] As we held in *Shelley, supra,* 205 *N.J.* at 328, 15 *A.3d* 818 the Legislature intended to "exclude day care providers, nursery schools, and preschool programs" from *N.J.S.A.* 2C:12–1(c)(3)(a).

itself. Defendant contends that the 1,000–foot radius used to measure the parameters of the school zone should begin in the parking lot of the School, not at the edge of the property on which the parish buildings rest. He argues that "school property used for school purposes," in *N.J.S.A.* 2C:12–1(c)(3)(a), includes only a limited portion of the property on which the School is found.

The Legislature did not expressly address this issue in *N.J.S.A.* 2C:12–1(c)(3)(a). As the statutory language is subject to " 'more than one plausible interpretation,' " we may refer to legislative history. *Shelley, supra,* 205 *N.J.* at 323–24, 15 *A.*3d 818 (quoting *DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039). Because the Legislature used identical language—"any school property used for school purposes"—for the purpose of defining a school zone in its two enactments, we may consider the legislative history of *N.J.S.A.* 2C:35–7 in our construction of *N.J.S.A.* 2C:12–1(c)(3)(a). *See* Norman J. Singer & J.D. Shambie Singer, 2B *Sutherland Statutory Construction* § 51:2, at 232 (7th ed. 2008) ("[W]ords or phrases in a provision that were used in a prior act pertaining to the same subject matter will be construed in the same sense."); *see also Mimkon v. Ford,* 66 *N.J.* 426, 433–34, 332 *A.*2d 199 (1975); *State v. Federanko,* 26 *N.J.* 119, 129, 139 *A.*2d 30 (1958).

The legislative history of *N.J.S.A.* 2C:35–7 confirms the Legislature's intent that the 1,000–foot radius of "school property" begins at the borders of the school's campus, not at the edge of the school building or its immediate vicinity. The *Official Commentary* provides in relevant part:

> The protected school safety zone includes all school property including playgrounds and athletic fields, and further extends 1,000 feet in all directions (measured "as the crow flies") from the outermost boundary of the school grounds or campus, and not from the perimeter of the school building itself. *Cf. N.J.S.A.* 33:1–76, which instead measures the distance from a licensed liquor establishment to a school "in the normal way that a pedestrian would properly walk from the nearest entrance of said church or school to the nearest entrance of the premises sought to be licensed."

[*Official Commentary, supra,* at 157.] [3]

The broad legislative definition of "school property used for school purposes" that governs the CDS statute applies with equal force to the assault by auto provision of *N.J.S.A.* 2C:12–1(c)(3)(a) that we construe here. The Legislature's determination that school safety zones include areas within 1,000 feet from the outermost boundary of the school grounds furthers its goal of protecting students at all stages of the school day. Drivers impaired by alcohol create serious risks to students and crossing guards on streets near the boundaries of school grounds, where children may congregate as they travel to and from school and participate in outdoor activities. The fact that a portion of the school grounds within 1,000 feet of the site of defendant's accident may have had non-school purposes does not change the analysis. The Legislature "certainly did not intend to protect only students in areas around a single-use facility," and did not limit the protected school zone to the classroom setting or its immediate vicinity. *See Ivory, supra,* 124 *N.J.* at 589, 592 *A.*2d 205.

Consistent with the Legislature's intent, the 1,000–foot radius for purposes of *N.J.S.A.* 2C:12–1(c)(3)(a) began on the border of the property on which the School is found, not at the school building itself. Defendant cannot assert a colorable claim of innocence based on the location of his accident, which indisputably took place within 1,000 feet of a portion of the school grounds.

Nor does defendant's third contention—that *N.J.S.A.* 2C:12–1(c)(3)(a) did not apply during the nighttime hours during which his accident occurred—give rise to a defense. The Legislature can and does limit the hours in which a particular law applies by including appropriate statutory language. *See, e.g., N.J.S.A.* 39:3–13.4(b) (prohibiting holders of provisional driver's licenses

---

[3] The *Official Commentary* is identified in its Forward as "an official document produced by the New Jersey Legislature, and is thus part of the formal legislative history of the Comprehensive Drug Reform Act." *Official Commentary, supra,* at 148.

who are under twenty-one years old from driving between 11:01 p.m. and 5:00 a.m.); *N.J.S.A.* 23:9–11 (prohibiting fishing in certain portions of Delaware River during specified times on Saturday and Sunday). Here, the Legislature included no such time constraints. Accordingly, by its plain language, *N.J.S.A.* 2C:12–1(c)(3)(a) applies at all times of the day and night. Moreover, *N.J.S.A.* 2C:12–1(c) specifically provides that an offender may not predicate a defense based on the fact that "no juveniles were present on the school property . . . at the time of the offense or that the school was not in session."

Accordingly, *N.J.S.A.* 2C:12–1(c)(3)(a) clearly applied when defendant seriously injured the victim, and the time of the accident does not create a "colorable claim of innocence." The first factor of the *Slater* test thus weighs against the withdrawal of defendant's guilty plea.

The second *Slater* factor, the "nature and strength of defendant's reasons" for attempting to withdraw his guilty plea, provides little support for defendant's motion for leave to withdraw the plea here. In *Slater,* we noted that this inquiry requires trial courts to ascertain not only the existence of a valid defense but to determine whether a defendant has "credibly demonstrated" why a "defense was 'forgotten or missed' at the time of the plea." *Slater, supra,* 198 *N.J.* at 160, 966 *A.*2d 461 (quoting *State v. Gonzalez,* 254 *N.J.Super.* 300, 303, 603 *A.*2d 516 (App.Div.1992)). A defendant's position with respect to this second *Slater* factor is thus strengthened in the presence of a credible excuse for his or her failure to assert a given defense prior to the guilty plea.

Defendant's contention with respect to the second factor of *Slater* is that he sought, but was not permitted, an opportunity to contest the State's allegation that the accident took place within 1,000 feet of a school. In the months before his guilty plea, defendant was fully aware that he was charged with a violation of *N.J.S.A.* 2C:12–1(c)(3)(a), of the identity of the school at issue, and of the location of his accident. Defendant seeks to premise the withdrawal of his guilty plea on information that was available to

him when he entered that plea. Even if defendant's counsel had, before defendant's guilty plea, prepared a map or otherwise documented the distance between defendant's accident and various portions of the property on which the School is located, that documentation would not give rise to a colorable claim of innocence. Accordingly, the second prong of the *Slater* test does not warrant reversal of the trial court's decision not to permit defendant to withdraw his plea.

The third *Slater* factor, the existence of a plea agreement, is not "given great weight in the balancing process" because it applies to the vast majority of criminal cases. *Slater, supra,* 198 *N.J.* at 161, 966 *A.*2d 461. The existence of a plea agreement in this case is not a significant factor. Finally, there has been no showing that withdrawal of the plea would unduly prejudice the State's prosecution of defendant or give him an unfair advantage were the case to go to trial. Accordingly, the fourth prong of the *Slater* test weighs in favor of withdrawal of defendant's guilty plea. *Id.* at 161–62, 966 *A.*2d 461.

The dissent contends that defendant has satisfied *Slater* by making a colorable claim that his accident took place more than 1,000 feet from "school property" within the meaning of *N.J.S.A.* 2C:12–1(c)(3)(a). *Post* at 35–37, 47 *A.*3d at 687–89. According to the dissent, because the accident took place within 1,000 feet of portions of the property upon which the School, the parish church and other facilities rest, but 1,048 feet from the outermost edge of the School's parking lot, there is a "factual dispute" that should be resolved by a jury. *Id.* at 35, 47 *A.*3d at 688.

The Legislature clearly instructed, in its *Official Commentary* to *N.J.S.A.* 2C:35–7, that the 1,000–foot radius extends "from the outermost boundary of the school grounds or campus, and not from the perimeter of the school building itself." *Official Commentary, supra,* at 157. The Legislature clearly intended to avoid inquiries as to whether various portions of the "grounds or campus" on which a school sits are commonly occupied by stu-

dents, and to ensure that the entirety of such a property—here a small urban campus comprising less than a city block—is within a zone of safety.

Thus, the "factual dispute" postulated by the dissent—an inquiry into whether the portion of the property in dispute that was within 1,000 feet of defendant's accident constituted "school property"—has been resolved by the Legislature. *N.J.S.A.* 2C:12–1(c)(3)(a) governs defendant's case, whether defendant's accident took place more than 1,000 feet from all of the "grounds or campus" of the School, so long as it occurred within a 1,000–foot radius of a portion of those grounds. *Ibid.* Even defendant admits that his accident took place within 1,000 feet of a portion of the property on which the School, church and other facilities are found. There is, in short, no "factual issue" for a jury to decide.

Accordingly, this distinguishes the case before the Court from our recent holding in *State v. Munroe*, 210 *N.J.* 429, 45 *A.*3d 348 (2012). In *Munroe*, the defendant demonstrated a "colorable claim of innocence" within the meaning of *Slater*. As we noted, the factual scenario presented by the defendant met the requirements of the applicable statute; "[a] jury could potentially find that defendant was justified in using deadly force, even though he was armed with a gun, provided defendant was not the initial aggressor and he 'reasonably believe[d] that [deadly] force [was] necessary to protect himself against death or serious bodily harm.'" *Munroe, supra,* 210 *N.J.* at 446, 45 *A.*3d 348 (quoting *N.J.S.A.* 2C:3–4(b)(2)). Here, in contrast, there is no version of the events at issue that gives rise to a colorable claim of innocence. Defendant does not dispute the location of the accident, and that accident indisputably occurred within a school zone as defined by *N.J.S.A.* 2C:12–1(c)(3)(a).[4]

---

[4] The dissent comments that "[f]rom the majority's perspective, once the school is located somewhere on church property, the entire church property becomes a school campus." *Post* at 36, 47 *A.*3d at 688. The dissent's characterization of our holding is incorrect. The property at issue here, on which the School is located, consists of a single municipal lot. It comprises less than a city

In the absence of a colorable claim of innocence or a credible explanation for defendant's failure to assert his defenses before his guilty plea, the balancing of the *Slater* factors supports the decision below. We hold that the trial court properly applied the "interests of justice" standard of *Rule* 3:9–3(e) and this Court's analysis in *Slater* to deny defendant's motion to withdraw his plea of guilty to a violation of *N.J.S.A.* 2C:12–1(c)(3)(a).

## VI.

We address defendant's remaining contentions with respect to his guilty plea. Defendant disputes the existence of a factual basis for recklessness as an element of assault by auto in violation of *N.J.S.A.* 2C:12–1(c)(3)(a). He acknowledges that this issue was not properly raised before the Appellate Division.

Recklessness is found when the defendant "consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." *N.J.S.A.* 2C:2–2(b)(3). This conscious disregard of the risk must entail a "gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." *Ibid.* Although driving while intoxicated does not necessarily establish the element of recklessness, "a reasonable jury may use a defendant's drunken state as evidence of his reckless driving." *State v. LaBrutto,* 114 *N.J.* 187, 204, 553 *A.*2d 335 (1989).

Here, defendant admitted that after he had "three to four drinks," his vehicle struck a victim who was crossing the street in front of him. The blood alcohol evidence before the trial court at the time of the guilty plea confirmed his intoxication at the time of the accident, and the police investigation indicated that he was driving above the speed limit. We therefore hold that the evi-

---

block, surrounded by city streets. *Given the purpose of N.J.S.A. 2C:12–1(c)(3) to* protect children from impaired drivers as they enter and leave their schools, the Legislature clearly intended that the entirety of the small lot at issue here should be considered "school property."

dence before the trial court established a factual basis for defendant's guilty plea to a violation of *N.J.S.A.* 2C:12–1(c)(3)(a) with respect to the element of recklessness.

■ Defendant next asserts that there was no factual basis for his guilty plea to driving with a suspended license in violation of *N.J.S.A.* 39:3–40. At the plea hearing, in the context of a discussion of the license suspension to be imposed upon defendant for his violation of *N.J.S.A.* 2C:12–1(c)(3)(a), the trial court inquired about defendant's prior license suspension:

THE COURT: I believe it's up to two years, and certainly a mandatory six month suspension for the DWI standing alone without regard to the assault. Why was [your] license suspended before?

THE DEFENDANT: From the '94 charge, and I just never paid the fee. I was in college and didn't have—

THE COURT: You've been driving without a license for that long?

THE DEFENDANT: Actually I had a license in North Carolina for 15 years and it expired in 2005, so I did have a license, but it just expired. It was expired.

Given the status of defendant's New Jersey and North Carolina driver's licenses in 2007, and his testimony before the sentencing court, there was a sufficient factual basis for defendant's guilty plea with respect to the offense of driving with a suspended license. At the time of his 2007 accident, defendant's license had not been restored following a suspension in 1994. Since defendant's driver's license was not restored, it remained suspended. His expired North Carolina license did not resolve the suspension of his New Jersey license. *See State v. Sandora,* 272 *N.J.Super.* 206, 207–08, 639 *A.*2d 728 (App.Div.1994) (by virtue of defendant's failure to restore his license following period of revocation, his license remained suspended for purposes of *N.J.S.A.* 39:3–40); *State v. Zalta,* 217 *N.J.Super.* 209, 212, 525 *A.*2d 328 (App.Div. 1987) (same); *see also State v. Nemesh,* 228 *N.J.Super.* 597, 609, 550 *A.*2d 757 (App.Div.1988) (defendant's valid Maryland license did not resolve the suspended status of his New Jersey license), *certif. denied,* 114 *N.J.* 473, 555 *A.*2d 600 (1989). This aspect of defendant's plea was based upon an adequate factual foundation.

██ Defendant further contends that because the Appellate Division addressed two errors by the trial court and remanded for further proceedings with respect to one aspect of his guilty plea, his entire plea is defective and should be vacated. The first of these two errors was corrected by the Appellate Division, which merged defendant's DWI conviction under *N.J.S.A.* 39:4–50 into the assault by auto in a school zone conviction under *N.J.S.A.* 2C:12–1(c)(3)(a).[5] The panel decided the second issue in defendant's favor, holding that he was not specifically apprised of the penal consequences of his guilty plea to driving with a suspended license in violation of *N.J.S.A.* 39:3–40. It remanded for the trial court's consideration of defendant's motion to withdraw his guilty plea to driving while his license was suspended.

Defendant contends that by virtue of the Appellate Division panel's recognition of these two errors in his plea and sentence, his guilty plea is no longer valid and he is entitled to withdraw the plea in its entirety. Neither aspect of the Appellate Division's determination justifies an order vacating defendant's guilty plea. Appellate courts routinely merge convictions on appeal following a guilty plea that is the result of a plea bargain, without vacating the plea. *See, e.g., State v. Baumann,* 340 *N.J.Super.* 553, 556–57, 775 *A.*2d 3 (App.Div.2001); *State v. Gregory,* 336 *N.J.Super.* 601, 607, 765 *A.*2d 1077 (App.Div.2001); *State v. Parker,* 335 *N.J.Super.* 415, 426, 762 *A.*2d 690 (App.Div.2000). Here, the panel's merger of the DWI conviction under *N.J.S.A.* 39:4–50 into the assault by auto in a school zone conviction eliminated one of defendant's convictions and reduced the sentence imposed by the trial court, acting in both respects to defendant's benefit. Accordingly, this is not a case in which "defendant's reasonable expectations under the plea agreement were not met." *Slater, supra,* 198 *N.J.* at 159, 966 *A.*2d 461 (citing *State v. Kovack,* 91 *N.J.* 476, 483, 453 *A.*2d 521 (1982)). The Appellate Division's merger of defendant's DWI

---

[5] The panel accordingly did not reach defendant's contention that the sentence imposed for DWI violated the terms of defendant's plea agreement.

conviction into his assault by auto conviction does not support defendant's motion to vacate his guilty plea.

The Appellate Division panel's limited remand to the trial court similarly does not warrant an order vacating his entire guilty plea. The panel remanded for a narrow purpose: consideration of defendant's motion to vacate his plea of guilty to driving with a suspended license in violation of *N.J.S.A.* 39:3–40, in order to ensure that defendant fully understood the penal consequences of his plea, as *Slater* mandates. *See Slater, supra,* 198 *N.J.* at 159, 966 *A.*2d 461; *see also State v. Johnson,* 182 *N.J.* 232, 241, 864 *A.*2d 400 (2005); *State v. Howard,* 110 *N.J.* 113, 122, 539 *A.*2d 1203 (1988). Given defendant's showing that he was not informed of the penal consequences of a guilty plea to driving while his license was suspended—an issue that differentiates his conviction for this offense from his other convictions—the Appellate Division panel's remand was properly limited to the driving while suspended offense, and did not affect defendant's other convictions. *See, e.g., State v. Lightner,* 99 *N.J.* 313, 316–17, 491 *A.*2d 1273 (1985) (holding that defendant's guilty plea to one offense lacked factual basis, and ordering limited remand to the trial court). Following development of a record on remand, the trial court's determination of whether defendant is entitled to withdraw his guilty plea on the offense of driving with a suspended license will be subject to appellate review.[6]

Finally, defendant asserts that his trial counsel was ineffective. This claim is governed by the standard of *Strickland v. Washington,* 466 *U.S.* 668, 687, 104 *S.Ct.* 2052, 2064, 80 *L.Ed.*2d 674, 693 (1984), and *State v. Fritz,* 105 *N.J.* 42, 52, 519 *A.*2d 336 (1987). Defendant must demonstrate that (1) his counsel's per-

---

[6] Defendant also contends that he should be able to withdraw his plea under *Rule* 3:9–3(e), because the sentence imposed by the trial court exceeded the negotiated-for sentence. Because the Appellate Division has merged defendant's DWI conviction and remanded for further consideration of his driving with a suspended license conviction, defendant's sentence will be the subject of further proceedings.

formance was deficient and (2) that he was prejudiced by that deficiency. *Strickland, supra,* 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 693. Defendant's counsel's performance is considered deficient if counsel's actions were beyond the range of professionally competent assistance. *State v. Savage,* 120 *N.J.* 594, 614, 577 *A.*2d 455 (1990). When a defendant has entered into a plea agreement, a deficiency is prejudicial if there is a reasonable probability that, but for counsel's errors, the defendant would not have decided to forego the plea agreement and would have gone to trial. *Hill v. Lockhart,* 474 *U.S.* 52, 59, 106 *S.Ct.* 366, 370, 88 *L.Ed.*2d 203, 210 (1985); *State v. Nuñez–Valdéz,* 200 *N.J.* 129, 139, 975 *A.*2d 418 (2009).

The record before this Court reveals only defendant's conclusory allegations that his counsel was deficient, that his counsel did not thoroughly explore his defenses, and that his guilty plea was not knowing and voluntary. That record is inadequate to evaluate defendant's ineffective assistance of counsel claim under *Strickland* and *Fritz,* which would require information outside of the record before the Court. That claim should be determined in a post-conviction relief proceeding. *See State v. Hess,* 207 *N.J.* 123, 145, 23 *A.*3d 373 (2011) ("[W]e routinely decline to entertain ineffective-assistance-of-counsel claims on direct appeal because those claims involve allegations and evidence that lie outside the trial record." (quotation omitted)); *State v. Preciose,* 129 *N.J.* 451, 460, 609 *A.*2d 1280 (1992) ("Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record."); *State v. Dixon,* 125 *N.J.* 223, 262, 593 *A.*2d 266 (1991) ("We find this record inadequate to evaluate the ineffective-assistance-of-counsel issue with respect to the confession. A post-conviction relief proceeding will have to address that issue."). Such a proceeding would be the appropriate forum to evaluate the strategy of defendant's trial counsel, defendant's reasons for pleading guilty before the trial court, and other issues requiring information that is not in the record before the Court.

### VII.

The judgment of the Appellate Division is affirmed.

Justice ALBIN, dissenting.

In denying defendant Barrington McDonald the opportunity to withdraw a guilty plea to a crime he may not have committed, the majority casts aside principles of law reaffirmed just several weeks ago in *State v. Munroe*, 210 *N.J.* 429, 45 *A.*3d 348 (2012). *Munroe* merely echoed clearly established tenets of our plea-withdrawal jurisprudence enunciated in *State v. Slater*, 198 *N.J.* 145, 966 *A.*2d 461 (2009). The following principles are sacrificed by the majority in its rush to uphold defendant's conviction: (1) that "courts are to exercise their discretion liberally to allow plea withdrawals" before sentence and the "scales should usually tip in favor of defendant" in a close case; (2) that courts must be "satisfied from the lips of the defendant that he committed the acts which constitute the crime"; (3) that defendant need only present "specific, potentially plausible facts" of his innocence, rather than persuade the motion judge that he has "a winning argument"; and (4) that "the ultimate goal is to ensure that legitimate disputes about the guilt or innocence of a criminal defendant are decided by a jury." *Munroe, supra,* 210 *N.J.* at 441–43, 45 *A.*3d 348 (internal quotation marks and citations omitted). Moreover, the majority evaluates the validity of defendant's reasons for his plea withdrawal with the very "skepticism" that we condemned in both *Munroe* and *Slater. See Slater, supra,* 198 *N.J.* at 160, 966 *A.*2d 461; *Munroe, supra,* 210 *N.J.* at 443, 45 *A.*3d 348.

The reason for defendant's presentence withdrawal motion was simple enough—an essential element of the crime to which he pled guilty was not established at the plea hearing and was in doubt even at the time of his sentencing. Defendant pled guilty to causing serious bodily injury while driving while under the influence *within 1,000 feet of school property* (DWI assault by auto). *N.J.S.A.* 2C:12–1(c)(3)(a). However, at no point during defen-

dant's plea colloquy with the court did he give the required factual basis that the accident actually occurred within a school zone. Nor did defendant or his attorney stipulate that the accident happened within 1,000 feet of school property. Nor did the State introduce a map at the plea hearing that, with defendant's acquiescence, would have satisfied the school-zone element.

Indeed, a school-zone map was not presented to the defense until after the entry of the plea. Moreover, before sentencing, defendant produced a map contesting that the offense occurred within 1,000 feet of school property. Even the trial judge conceded that there was "no definitive answer" whether the accident occurred within a school zone and that the issue would "likely have to be litigated based on the respective positions" of the State and defendant. Nevertheless, the trial judge denied defendant his right to a jury trial to resolve the disputed issue and proceeded to sentence defendant to prison.

A judicial policy of "liberally" allowing plea withdrawals before sentencing cannot be squared with the result in this case. To uphold an unjust conviction, the majority has impaneled itself as a jury and abandoned settled legal principles. I therefore respectfully dissent.

## I.

Defendant pled guilty to second-degree DWI assault by auto in a school zone, *N.J.S.A.* 2C:12–1(c)(3)(a), and two motor vehicle violations, driving while intoxicated, *N.J.S.A.* 39:4–50, and driving with a suspended license, *N.J.S.A.* 39:3–40. The guilty plea was entered pursuant to an agreement with the State, which recommended that defendant's sentence on the school-zone offense not exceed a three-year flat state-prison sentence and that his sentence on the remaining charges run concurrently.

*Rule* 3:9–2 requires that, at a plea hearing, the court elicit a factual basis for each element of the offense before accepting a guilty plea. *State v. Sainz*, 107 *N.J.* 283, 293, 526 *A.2d* 1015 (1987). The court, before accepting a guilty plea, must question

"the defendant personally, under oath or by affirmation, and determin[e] by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea." *R.* 3:9–2. The court must be "satisfied *from the lips of the defendant* that he committed the acts which constitute the crime." *Slater, supra,* 198 *N.J.* at 155, 966 *A.*2d 461 (quoting *State v. Smullen,* 118 *N.J.* 408, 415, 571 *A.*2d 1305 (1990)) (emphasis added). One of the important purposes served by the factual-basis requirement is to ensure that a defendant does not plead guilty to an offense "without realizing that his conduct does not actually fall within the charge." *State v. Barboza,* 115 *N.J.* 415, 421, 558 *A.*2d 1303 (1989) (internal quotation marks and citation omitted). A plea without an adequate factual basis must be vacated by the court. *Id.* at 419–20, 558 *A.*2d 1303.

Asking defendant, as was done here, whether he is guilty of the crime charged is not the same as eliciting the factual underpinnings for the plea. *See Munroe, supra,* 210 *N.J.* at 445, 45 *A.*3d 348. To be sure, defendant responded "Yes" to the court's general question, are you guilty of driving "a vehicle recklessly while ... intoxicated and also within a thousand feet of school property and caus[ing] serious bodily injury to Robert Fields." But that exchange was not a substitute for a plea colloquy. "Our court rules and case law require a *factual basis* for a plea of guilty, that is, a truthful account of what actually occurred to justify the acceptance of a plea." *State v. Taccetta,* 200 *N.J.* 183, 198, 975 *A.*2d 928 (2009) (emphasis added).

So let us now turn to the plea colloquy between the court and defendant. The court, through a series of questions, elicited from defendant that he was driving while intoxicated and that his license was suspended at the time. Defendant admitted that, while driving on Pacific Avenue in Atlantic City, he struck Mr. Fields, who had stepped in front of his car. Defendant explained that he "jumped" out of his car and rendered first aid until the paramedics arrived. Then the prosecutor, apparently concerned that a factual basis for the school-zone element had not been

established, asked, "you don't dispute it was within a thousand feet of Our Lady Star of the Sea School, when the accident occurred?" Defendant responded, "I didn't see it, but I might have missed it, okay."

There were no follow-up questions to defendant's non-responsive answer. Defendant obviously did not have direct knowledge whether the accident occurred within a school zone. The prosecutor did not introduce a certified school-zone map and have defendant stipulate that the offense occurred within 1,000 feet of school property. The precise location of the accident with reference to school property was never settled on the record.

Before sentence, defendant retained a new attorney who presented a map to the court purportedly refuting that the offense happened within 1,000 feet of school property. Defendant moved to withdraw his guilty plea. In denying the withdrawal motion, the court conceded that there was no "definitive answer" whether the accident occurred within 1,000 feet of the school, and that the issue would likely be litigated. Nevertheless, the court stated it was satisfied with defendant's factual basis for the plea. The court left defendant with the cold solace that he might have an ineffective-assistance-of-counsel claim and could seek post-conviction-relief—relief that undoubtedly would only come after he served his prison sentence.

## II.

The inadequate factual basis, standing alone, was a sufficient basis for withdrawal of defendant's guilty plea. *Barboza, supra,* 115 *N.J.* at 420, 558 *A.*2d 1303. Additionally, defendant should have been permitted to withdraw his guilty plea because he met the "interests of justice" standard set forth in *Slater* and recently reaffirmed in *Munroe*—a standard that requires courts "to exercise their discretion liberally to allow plea withdrawals." *Munroe, supra,* 210 *N.J.* at 441, 45 *A.*3d 348 (quoting *Slater, supra,* 198 *N.J.* at 156, 966 *A.*2d 461) (internal quotation marks omitted).

The "interests of justice" standard requires courts to consider four factors in deciding a plea-withdrawal motion:

(1) whether the defendant has asserted a colorable claim of innocence;

(2) the nature and strength of [the] defendant's reasons for withdrawal;

(3) the existence of a plea bargain; and

(4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.

[*Slater, supra*, 198 *N.J.* at 157–58, 966 *A.*2d 461].

## A.

First, defendant presented a "colorable claim of innocence." *Slater, supra*, 198 *N.J.* at 157, 966 *A.*2d 461. He set forth " 'particular, plausible facts' that, if proven in court, would lead a reasonable factfinder to determine the claim is meritorious." *Munroe, supra*, 210 *N.J.* at 442, 45 *A.*3d 348 (quoting *Slater, supra*, 198 *N.J.* at 159, 966 *A.*2d 461) (emphasis added). Defendant claims that the accident did not occur within 1,000 feet of school property. The school at issue is Our Lady Star of the Sea Regional School, a parochial elementary school. The school is owned and operated by Our Lady Star of the Sea Church and is located among a complex of church buildings. In support of his withdrawal motion, defendant offered a map showing that, while the accident occurred within 1,000 feet of the entire church complex, it occurred approximately 1,048 feet from the outermost edge of the school's parking lot. Defendant maintains that the entire church complex is not necessarily "school property used for school purposes" as required by *N.J.S.A.* 2C:12–1(c)(3)(a).

The issue is not whether defendant has a winning defense, but a plausible one. The majority ignores the factual dispute, which is a quintessential jury issue, and instead—without a record—decides as a matter of law that the entire church complex qualifies as "school property used for school purposes." The majority's detailed recitation of the legislative history of *N.J.S.A.* 2C:12–1(c)(3)(a) does not alter one immutable truth: whether the accident actually occurred within a school zone is a matter for a jury. *See Munroe, supra*, 210 *N.J.* at 442–43, 45 *A.*3d 348.

I agree that a DWI assault by an auto committed within 1,000 feet of the outermost boundary of school property would violate *N.J.S.A.* 2C:12–1(c)(3)(a). However, there is a difference between an offense occurring within 1,000 feet of school property and an offense occurring within 1,000 feet of church property on which a school is situated. This distinction the majority refuses to acknowledge. From the majority's perspective, once the school is located somewhere on church property, the entire church property becomes a school campus. Nothing in the statute, its legislative history, or our precedent supports that judicial expansion of a school zone.

It bears noting that the property owned by the church on which the school is located consists of several municipal lots—at least according to the maps submitted by the parties. The lot on which the school, church, and rectory or convent are located is not small (at least in the eye of this beholder). Last, the accident, according to the maps, occurred within 1,000 feet of the church's rectory or convent—not the school or any school parking lot. Any differences members of this Court may have in assessing the evidence should have been resolved by a factfinder, not the Supreme Court.

In this case, there is a complete absence of any factfinding that the entire church property constituted a school campus. Moreover, defendant never stipulated that the church and school property are one and the same. Whether the offense occurred at the outermost boundary of a school property or at the outermost boundary of non-education related church property was for a jury—not this Court—to decide.

Indeed, the Model Jury Charge for a drug school-zone case under *N.J.S.A.* 2C:35–7—the statute relied on by the majority in construing *N.J.S.A.* 2C:12–1(c)(3)(a)—instructs trial courts to charge the jury if a factual issue arises over whether the property in question is school property used for school purposes. Under the Model Charge, the jury is advised: "The term school property means any property which is used for school purposes and is owned by or leased to an elementary school, secondary school or

school board. The 1,000 feet zone extends from the outermost boundary of the school property and not from the school building itself." *Model Jury Charge (Criminal),* Possession with Intent to Distribute Controlled Dangerous Substance Near or On School Property (January 2008). When an issue is raised whether "the property was used for school purposes," the jury must be further instructed that

[i]n addition to determining whether the property is school property, you must determine the purpose for which it is used. You must decide whether the property is regularly, consistently, and actually used for school purposes, and whether the property's appearance would give an objectively reasonable person reason to know that it was used ... for school purposes.

[*Model Jury Charge (Criminal),* Possession with Intent to Distribute Controlled Dangerous Substance Near or on School Property Used for School Purposes, n.1 (January 2008) (citing *State v. Ivory,* 124 *N.J.* 582, 587, 592 *A.2d* 205 (1991)).][1]

It was for a jury to decide if the outermost edge of the church complex was church property, not "school property used for school purposes." Because defendant offered credible evidence that the accident may not have occurred within 1,000 feet of school property, he presented a "colorable claim of innocence." *See Munroe, supra,* 210 *N.J.* at 442, 45 *A.3d* 348.

### B.

Second, defendant has presented a legitimate, non-pretextual reason for the plea withdrawal. Here, defendant claims that the offense did not occur within 1,000 feet of a school zone—an essential element of the crime of DWI assault by auto. The plea colloquy does not contradict this claim. Moreover, the State did not introduce a school-zone map at the plea hearing. As noted earlier, even the trial court found "no definitive answer" in the record whether the offense occurred within a school zone. Clear-

---

[1] The Model Jury Charge for the statute at issue in this case, *N.J.S.A.* 2C:12–1(c)(3)(a), indicates only that the jury is to be charged with the responsibility of determining whether the defendant committed the assault with an automobile "while on any school property used for school purposes ... or within 1,000 feet of such property." *Model Jury Charge (Criminal),* Assault by Auto or Vessel (Serious Bodily Injury with Drunk Driving or Refusal) (June 2004).

ly, the failure of defendant's original attorney to perform the requisite due-diligence investigation to confirm that the offense fell within a school zone is a sound reason why the defense was overlooked. Defendant "made a plausible showing of a valid defense against the charges, [and] also credibly demonstrated why that defense was 'forgotten or missed' at the time of the plea." *See Slater, supra,* 198 *N.J.* at 160, 966 *A.*2d 461. The trial court's suggestion that defendant could pursue post-conviction relief for ineffective assistance of counsel is not a viable remedy because defendant will have served a prison sentence for a crime he might not have committed by the time relief is granted. That approach would convert the "interests of justice standard" into an instrument of injustice. Surely, if a defendant was ineffectively represented in entering his plea, "the interests of justice would not be served by effectuating the [plea] agreement" at sentencing. *See R.* 3:9–3(e).

## C.

Third, a defendant who has made a plausible showing of his potential innocence cannot be denied relief solely because his guilty plea was entered pursuant to an agreement with the State. "We recognize that the vast majority of criminal cases are resolved through plea bargains." *Munroe, supra,* 210 *N.J.* at 443, 45 *A.*3d 348 (quoting *Slater, supra,* 198 *N.J.* at 161, 966 *A.*2d 461) (internal quotation marks omitted). That is why the presence of a plea agreement cannot be given significant weight. *Ibid.*

Last, a plea withdrawal would not have unfairly prejudiced the State. "The critical inquiry . . . is whether the passage of time has hampered the State's ability to present important evidence." *Slater, supra,* 198 *N.J.* at 161, 966 *A.*2d 461. "In calculating any lost opportunity to the State, . . . we look to the time between the entry of the plea and the hearing on the withdrawal motion." *Munroe, supra,* 210 *N.J.* at 443, 45 *A.*3d 348. Here, the guilty plea was entered on May 21, 2007; sentencing was initially scheduled for July 20, 2007; and the plea-withdrawal hearing was

held on November 2, 2007. The State has made no claim that it would have been "hampered" in prosecuting the case by the delay of several months. There is no charge that defendant sought to gain an unfair advantage by entering a plea and then moving to withdraw it.

Balancing all of the "interests of justice" factors liberally in favor of granting a plea withdrawal, as required by our jurisprudence, should make this case an easy call. Defendant should be permitted to withdraw his guilty plea. Defendant is entitled to have a jury decide whether the offense was committed within 1,000 feet of school property.

### III.

The majority's decision will leave the bench and bar wondering whether the four factors enunciated in *Slater* are so malleable that any desired result can be achieved. Most disturbing of all is that the majority, through the guise of statutory interpretation, plays the role of factfinder—conclusively resolving against defendant a material issue of fact in dispute.

Defendant met the "interests of justice" standard for the withdrawal of his plea. The majority's refusal to give him the benefit of that standard is a manifest injustice. For these reasons, I must dissent.

*For affirmance*—Chief Justice RABNER, Justices LaVECCHIA, HOENS, and PATTERSON—4.

*For reversal*—Justices ALBIN and Judge WEFING (temporarily assigned)—2.