**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1687-16T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

T.M.K.,

    Defendant-Appellant,

and

V.S.P.,

    Defendant.

_____

IN THE MATTER OF THE GUARDIANSHIP OF
K.M.K.,

    Minor.

_____

        Submitted September 12, 2017 — Decided September 20, 2017

        Before Judges Carroll and Leone.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FG-01-0058-16.

Joseph E. Krakora, Public Defender, attorney for appellant (John A. Salois, Designated Counsel, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Daniel Pierre, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Caitlin McLaughlin, Designated Counsel, on the brief).

PER CURIAM

Defendant T.M.K., the biological father of K.M.K., appeals from the December 12, 2016 Family Part judgment for guardianship that terminated his parental rights to his son, who was born in August 2008.[1] Defendant contends that the New Jersey Division of Child Protection and Permanency (Division) failed to prove each of the four prongs of N.J.S.A. 30:4C-15.1a by clear and convincing evidence. Having considered defendant's arguments in light of the record and applicable legal standards, we affirm.

I.

Judge W. Todd Miller conducted the guardianship trial on December 2, 2016. The Division presented the testimony of expert psychologist Alan J. Lee, Psy.D., caseworker Danielle Lind, and

---

[1] The judgment also terminated the parental rights of K.M.K.'s biological mother, V.S.P., who voluntarily surrendered her parental rights on October 12, 2016, and is not involved in this appeal.

defendant, who also testified on his own behalf. On December 12, 2016, Judge Miller rendered a thorough twenty-six page opinion in which he outlined his findings regarding all four prongs of the statutory test. We incorporate by reference Judge Miller's detailed factual findings, and highlight the following.

Judge Miller found Dr. Lee's testimony "very convincing, reliable and credible," and noted that his expert testimony "was not impeached during cross-examination or undermined by competing expert opinions." The judge similarly found Lind's testimony "credible and reliable." He noted that Lind "clearly delineated the extraordinary efforts initiated by the Division to aid and assist defendant" and that her testimony was not "impeached or undermined by opposing testimony offered by [] defendant." In contrast, the judge found:

> Defendant's testimony was not reliable or trustworthy. This is not to say he was untruthful. Rather[,] he did not have a good grasp of the file history, timeline and substantive activities. Indeed, he made up untold number of excuses for his shortcomings when it came to consistency of parenting time, missing provider or therapeutic appointments, and positive drug testing results.

After carefully reviewing the evidence presented, Judge Miller made the following factual findings:

> 1. Defendant is the biological father of [K.M.K.] . . . [who was] eight years old as of this decision[].

2. [K.M.K.] was removed from [] defendant's home by the Division on at least two occasions since 2008, due to lack of parenting skills and drug use in the home.

3. Defendant was incarcerated for at least three years after [K.M.K.] was born.

4. Defendant has a history of criminal activity related to drug use/distribution and weapons.

5. Defendant has a long history of mental deficits and he has not sought and/or participated in consistent treatment of same.

6. The Division provided defendant with many services including mental health and drug treatment. Defendant failed to complete any of the services provided.

7. Defendant has not demonstrated stable housing or stable income during [K.M.K.'s] lifetime. Defendant has not provided [K.M.K.] with child support.

8. Defendant is remarkably inconsistent in his parenting time with [K.M.K.].

9. [K.M.K.'s] biological mother surrendered her parental rights to [K.M.K.] on October 12, 2016.

10. [K.M.K.] has spent the majority of his eight years after birth in a resource home due to his biological parents being involved in drug related and criminal activity.

11. [K.M.K.] is currently bonded with his resource parents as observed and opined by Dr. Lee. The resource parents are also providing a home for [K.M.K.'s] half sibling J., and they have bonded.

4

12. [K.M.K.] has no significant bond with defendant as observed and opined by Dr. Lee.

Based on these findings, Judge Miller concluded that the Division proved by clear and convincing evidence the four prongs of the best interests test, codified in N.J.S.A. 30:4C-15.1a(1) to -15.1a(4), and that defendant's parental rights to K.M.K. should be terminated.

## II.

We begin our analysis by recognizing the fundamental proposition that parents have a constitutionally protected right to the care, custody and control of their children. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 1394-95, 71 L. Ed. 2d 599, 606 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). "The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights . . .,' 'far more precious . . . than property rights.'" Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212, 31 L. Ed. 2d 551, 558 (1972) (citations omitted). "The preservation and strengthening of family life is a matter of public concern as being in the interests of the general welfare." N.J.S.A. 30:4C-1(a); see also K.H.O., supra, 161 N.J. at 347.

The constitutional right to the parental relationship, however, is not absolute. N.J. Div. of Youth & Family Servs. v.

<u>A.W.</u>, 103 <u>N.J.</u> 591, 599 (1986). At times, the parent's interest must yield to the State's obligation to protect children from harm. <u>In re Guardianship of J.C.</u>, 129 <u>N.J.</u> 1, 10 (1992). To effectuate these concerns, the Legislature created a four-prong test for determining whether a parent's rights must be terminated in the child's best interests. This statutory test requires that the Division prove by clear and convincing evidence that:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [<u>N.J.S.A.</u> 30:4C-15.1a.]

These "four prongs are not discrete and separate, but relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." <u>N.J. Div. of Youth &</u>

Family Servs. v. F.M., 211 N.J. 420, 448 (2012) (citations omitted).

The Division need not demonstrate actual harm in order to satisfy prong one. N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 440 (App. Div. 2001), certif. denied, 171 N.J. 44 (2002). The test is whether the child's safety, health or development will be endangered in the future and whether the parent is or will be able to eliminate the harm. A.G., supra, 344 N.J. Super. at 440. Prong one can be satisfied where a parent refuses to treat his or her mental illness and the mental illness poses a real threat to a child. F.M., supra, 211 N.J. at 450-51; see also In re Guardianship of R.G. and F., 155 N.J. Super. 186, 194 (App. Div. 1977) (holding that the parents' mental illnesses created an environment in which they were unable to adequately care for and raise their children, thus causing them harm, despite the absence of physical abuse or neglect); A.G., supra, 344 N.J. Super. at 438-39 (holding that the fact that parents may be morally blameless is not sufficient when psychological incapacity makes it impossible for them to adequately care for a child).

In addition, a parent's failure to provide a "permanent, safe, and stable home" engenders significant harm to the child. In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999). Likewise, a parent's failure to provide "solicitude, nurture, and care for

an extended period of time is in itself a harm that endangers the health and development of the child." Id. at 379. Compounding the harm is the parent's "persistent failure to perform any parenting functions and to provide . . . support for [the child]." Id. at 380. Such inaction "constitutes a parental harm to that child arising out of the parental relationship [that is] cognizable under N.J.S.A. 30:4C-15.1(a)(1) and (2)." Id. at 380-81.

"The second prong, in many ways, addresses considerations touched on in prong one." F.M., supra, 211 N.J. at 451. The focus is on parental unfitness. K.H.O., supra, 161 N.J. at 352; D.M.H., supra, 161 N.J. at 378-79. In considering this prong, the court should determine whether it is reasonably foreseeable that the parent can cease to inflict harm upon the child. A.W., supra, 103 N.J. at 607. The second prong may be satisfied

> by indications of parental dereliction and irresponsibility, such as the parent's continued or recurrent drug abuse, the inability to provide a stable and protective home, the withholding of parental attention and care, and the diversion of family resources in order to support a drug habit, with the resultant neglect and lack of nurture for the child.
>
> [K.H.O., supra, 161 N.J. at 353.]

"Prong two may also be satisfied if 'the child will suffer substantially from a lack of . . . a permanent placement and from

the disruption of [the] bond with foster parents.'"  F.M., supra,

211 N.J. at 451 (quoting K.H.O., supra, 161 N.J. at 363).

"The third prong requires an evaluation of whether [the

Division] 'made reasonable efforts to provide services to help the

parent' remedy the circumstances that led to removal of the

children from the home."  Id. at 452 (quoting N.J.S.A. 30:4C-

15.1a(3)).  The emphasis on the third prong

> is on the steps taken by [the Division] toward
> the goal of reunification.  The diligence of
> [the Division's] efforts on behalf of a parent
> is not measured by whether those efforts were
> successful.  Reasonable efforts may include
> consultation with the parent, developing a
> plan for reunification, providing services
> essential to the realization of the
> reunification plan, informing the family of
> the child's progress, and facilitating
> visitation.  Experience tells us that even
> [the Division's] best efforts may not be
> sufficient to salvage a parental relationship.
>
> [Ibid. (citation omitted).]

As part of the inquiry, "the court must consider the alternatives

to termination of parental rights and whether the Division acted

reasonably."  A.G., supra, 344 N.J. Super. at 434-35.  "The

reasonableness of the Division's efforts depends on the facts in

each case."  Id. at 435.

The fourth prong seeks to determine whether "[t]ermination

of parental rights will not do more harm than good."  N.J.S.A.

30:4C-15.1a(4).  The fourth prong serves as a "'fail-safe' inquiry

guarding against an inappropriate or premature termination of parental rights." F.M., supra, 211 N.J. at 453. "The question ultimately is not whether a biological mother or father is a worthy parent, but whether a child's interest will best be served by completely terminating the child's relationship with the parent." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 108 (2008). The court must determine "whether . . . the child will suffer a greater harm from the termination of ties with [his or] her natural parents than from the permanent disruption of [his or] her relationship with [his or] her foster parents." K.H.O., supra, 161 N.J. at 355.

Because harm to the child stemming from termination of parental rights is inevitable, "the fourth prong of the best interests standard cannot require a showing that no harm will befall the child as a result of the severing of biological ties." Ibid. Rather, the court's inquiry is one of comparative harm, for which the court must consider expert evaluations of the strength of the child's relationship to the biological parents and the foster parents. Ibid. Thus, "'[t]o satisfy the fourth prong, the [Division] should offer testimony of a well qualified expert who has had full opportunity to make a comprehensive, objective, and informed evaluation of the child's relationship with both the natural parents and the foster parents.'" F.M., supra, 211 N.J.

at 453 (quoting <u>N.J. Div. of Youth & Family Servs. v. M.M.</u>, 189 <u>N.J.</u> 261, 281 (2007)). "Under this prong, an important consideration is [a] child's need for permanency. Ultimately, a child has a right to live in a stable, nurturing environment and to have the psychological security that his most deeply formed attachments will not be shattered." <u>Ibid.</u> (citations omitted).

## III.

In the present case, with regard to the first prong, Judge Miller found that:

> Defendant suffers from significant mental health deficits, substantial drug dependency, and criminal history. These concerns have not been resolved despite the efforts and services offered by the Division. Dr. Lee addressed these concerns and deficits in his assessments and testimony. Indeed, he convincingly opined that defendant has not and will not offer [K.M.K.] a stable or nurturing home in the near future. He requires ongoing mental health treatment based upon his independent diagnostic assessments and defendant should be supervised while undergoing treatment.
>
> Defendant has not availed himself [of] services. He has consistently missed a substantial number of urine screens, therapeutic appointments, and parenting appointments. Defendant opted to pursue drug use and other criminal activity resulting in his incarceration, leaving [K.M.K.] without a father for most of his lifetime (he is now eight [] years old). Defendant was woefully inconsistent with parenting/visitation, psychological treatment, and rehabilitation services, even when he was not incarcerated. This required [K.M.K.] to be placed in foster

11

care for most of his eight years. Indeed, [K.M.K.] has expressed fear that he will be reunified with his father and in fact has related nightmares, notwithstanding the services provided to [K.M.K.] by the Division. This clearly demonstrates past and prospective harm.

In considering the second prong, Judge Miller concluded that defendant "is unwilling or unable to eliminate the aforesaid harm facing [K.M.K.] or to provide a safe and stable home and that the delay of permanent placement will only add to the harm thus suffered." The judge acknowledged defendant was "making a last minute effort to engage in services," but found "even at this late date his compliance has been less than stellar," including with mental health services. The judge noted,

> [K.M.K.] has bonded with his pre-adoptive resource parents according to Dr. Lee and the Division caseworker. He refers to them as mom and dad. He responds to them in a loving and self-assured manner. He interacts with them with confidence rather than with indifference or fear. They have the potential to provide an enduring and loving home to [K.M.K.]. This arrangement represents the first viable option for permanency. [K.M.K.] has likewise expressed his desire[] to be adopted by his current resource parents.

As to prong three, Judge Miller found that the Division provided defendant and K.M.K. "with a myriad of services" and that "defendant did not [] successfully complete any of the services provided, even though [they] were designed to address

12

most, if not all, of his underlying deficits." Defendant complains the court made some visitation discretionary with K.M.K., but the judge explained that was necessary because of K.M.K.'s "apprehension and fear of defendant," which caused K.M.K. nightmares and great suffering. The judge further reasoned:

> Dr. Lee was found to be reliable and credible. There were no competing experts challenging the opinions Dr. Lee offered. In the absence of a competing expert, Dr. Lee still must satisfy the [c]ourt that his opinions are supportable, and they were. His opinions were supported by competent factual evidence that was utilized in conjunction with reliable techniques and standardized testing common in the field of psychology. His opinions reliably established that [K.M.K.] will not suffer any long or enduring harm if the parental rights of defendant are terminated, because there is no bond, connection, or enduring love between [K.M.K.] and his father. Conversely, Dr. Lee opined that if [K.M.K.] is removed from his pre-adoptive resource home, he will likely suffer lasting harm that could manifest as anxiety, depression, loss of self-esteem, impulse control, and other behavior related problems in part, because of the bond that is occurring with the resource parents and half-sibling.

Our scope of review on appeals from orders terminating parental rights is limited. In such cases, the trial court's findings generally should be upheld so long as they are supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). A decision in this context should only be reversed or altered on

13                                      A-1687-16T1

appeal if the trial court's findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 511 (2004) (quoting In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). We must give substantial deference to the trial judge's opportunity to have observed the witnesses first hand and to evaluate their credibility. R.G., supra, 217 N.J. at 552. Even where the appellant "allege[s] error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom," deference must be afforded unless the court "went so wide of the mark that a mistake must have been made." M.M., supra, 189 N.J. at 279 (citations omitted).

Our review of this record convinces us that no mistake was made, and that Judge Miller's decision is supported by clear and convincing evidence and carefully tracks the statutory requirements of N.J.S.A. 30:4C-15.1a. Defendant's contentions to the contrary do not provide grounds for intervention. Accordingly, we affirm the termination of defendant's parental rights to K.M.K. substantially for the reasons set forth in Judge Miller's comprehensive and thoughtful written opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1687-16T1