NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1334-18T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AMIR A. ABUROUMI,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

July 24, 2020

APPELLATE DIVISION

Argued telephonically June 30, 2020 –
Decided July 24, 2020

Before Judges Messano, Vernoia and Rose.

On appeal from the Superior Court of New Jersey, Law
Division, Passaic County, Accusation No. 14-12-1059.

Melvin R. Solomon argued the cause for appellant
(Parsekian & Solomon, PC, attorneys; Melvin R.
Solomon, on the briefs).

Marc A. Festa, Senior Assistant Prosecutor, argued the
cause for respondent (Camelia M. Valdes, Passaic
County Prosecutor, attorney; Mark A. Festa, of counsel
and on the brief).

The opinion of the court was delivered by

ROSE, J.A.D.

Defendant Amir A. Aburoumi, a non-citizen of the United States, appeals from an October 11, 2018 order denying his motion to vacate his guilty plea based on claims of ineffective assistance of counsel (IAC). The court also denied the motion as a first petition for post-conviction relief (PCR) without an evidentiary hearing. At issue on this appeal is whether the performances of defendant's plea attorneys were deficient by: (1) negotiating an agreement that required defendant to plead guilty as a condition of admission to pretrial intervention (PTI), when the Guideline to the Rule in effect at the time of defendant's plea prohibited such a requirement by the State; and (2) failing to advise defendant that his acknowledgment of guilt subjected him to removal proceedings – even though the charges would be dismissed upon defendant's successful completion of PTI. Because the record does not reveal the substance of the plea negotiations between the State and defense counsel, nor the advice counsel rendered to defendant about the immigration consequences of his guilty plea, we vacate the court's order and remand for an evidentiary hearing.

I.

Defendant was born in Jerusalem in 1996; eight years later, he entered the United States with his parents and two sisters. In January 2015, when he was just shy of nineteen years old and about to start college, defendant pled guilty to

a one-count accusation, charging third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (purposely or knowingly causing bodily injury to another with a deadly weapon). In exchange for his guilty plea, the State recommended defendant's admission to PTI and dismissed the underlying complaint-warrant, which charged weapons offenses.

During the plea hearing, the prosecutor informed the court: "The State's offer here [wa]s probation[,]" but the State had accepted defendant's counteroffer of "PTI with a guilty plea" to third-degree aggravated assault. That agreement was negotiated between the prosecutor and defendant's former attorney, but during the plea hearing, defendant and his second plea counsel confirmed their understanding of the resulting agreement. Accordingly, defendant admitted that on November 3, 2014, he and three friends were riding in a car in Paterson, when one of the occupants fired a paintball gun and struck someone outside the vehicle. Defendant did not fire the weapon, but he knew his friend "was going to shoot the gun towards someone." Defendant also acknowledged that the victim sustained bodily injury.

After eliciting defendant's factual basis and reviewing the rights he relinquished by pleading guilty to an accusation, the court questioned defendant about the plea form. Defendant said he provided truthful answers to the

questions on the form, and signed and dated it where required. The court reviewed the terms of the plea agreement with defendant, stating that if defendant successfully completed the PTI program, the accusation would be dismissed. Conversely, because there was no agreement on sentencing, if defendant were terminated from the program, the court could sentence defendant "up to the maximum permitted by law." Defendant confirmed he understood the plea terms.

Relevant here, defendant told the plea court he held a "green card" and acknowledged he was "a legal resident." In response to question seventeen of the plea form, defendant indicated he was not a United States citizen; his "guilty plea may result in [his] removal from the United States"; he had "discussed with an attorney the potential immigration consequences of [his] plea"; and he "still wish[ed] to plead guilty[.]"

The court then advised defendant: "[I]f you don't do what you're supposed to, and you're terminated from PTI, and, then, I sentence you on this aggravated assault, I'm not an immigration lawyer, but I can almost assure you, that's going to be a problem for you." Defendant indicated that he understood the court's warning. The following exchange then occurred:

> THE COURT: <u>You're going into PTI with a guilty plea to this charge. I don't know the consequences of that.</u>

4

I'm not an immigration lawyer. . . . [D]id you consult with an immigration lawyer, or did you not?

DEFENDANT: Not immigration. Not yet.

. . . .

THE COURT: [Counsel] is that something that was discussed?

DEFENSE COUNSEL: Yes, Your Honor, we discussed it earlier today . . . . [Defendant] had originally spoken with [his first plea counsel], and [counsel] did discuss the potential ramifications of a plea of guilty . . . based upon [defendant's] status. And I, again, advised him . . . if [sic] it was in his interest to reach out to an immigration lawyer. And I explained there may be negative ramifications, if he agreed to go through with the plea today, was it [sic] necessary for him to speak to an immigration lawyer. He understands the potential ramifications.

[(Emphasis added).]

Defendant verified the truth of his second plea counsel's representations to the court, which then continued its exchange with defendant:

THE COURT: Okay. Now, I don't know what those ramifications are. And, certainly, to the extent there are any ramifications, you know, you can contest that. In other words, you can fight anything that the government decides to do . . . if the government decides to do something, in terms of deportation.

But, for purposes of the plea, what I want you to understand is, that, as a result of your guilty plea, that is, . . . you're pleading guilty to this particular charge, I

mean, the government can take some action.  <u>And that could result in your deportation.</u>  Or prevent you from reentering the country, should you leave . . . the country; do you understand that?

DEFENDANT:  Yeah.  I understand.

THE COURT:  <u>I don't know whether that's likely, or a certainty, or not.  I don't know.  I mean, for all I know, it may be that that's going to happen to you. . . .  But, for purposes of this plea, I want you to assume the worst.</u>  That is, that the government does come after you, and they [sic] decide that . . . they're [sic] going to deport you.  Do you still want to go through with the plea?

DEFENDANT:  Yes.

THE COURT:  Okay.  And you're free, obviously, later on, to consult with a lawyer, to contest anything that the government does.  But, I want it clear, at this juncture, that, if you wanted to consult with . . . an immigration lawyer, I would give you that right.  But, at this point, you do not want to consult with an immigration lawyer; is that accurate?

DEFENDANT:  Yes.

[(Emphasis added).]

At the conclusion of the hearing, the court informed defendant, "if you do everything you're supposed to do, the charge will be dismissed.  And . . . it won't interfere with your college or anything like that . . . ."  Defendant confirmed he understood.

Following defendant's successful completion of the PTI program in March 2016, the accusation was dismissed. The following year, defendant's family members were granted lawful permanent residence status, but defendant's application was denied as a result of his guilty plea.[1] In April 2018, defendant moved to vacate his guilty plea, alleging plea counsel[2] was deficient for failing to advise defendant that a guilty plea was not required for admission to PTI, and that a plea-for-PTI condition "would be the equivalent of a conviction" with "severe immigration consequences."

In his affidavit supporting the motion, defendant initially claimed he "was never given the opportunity to speak to an attorney familiar with immigration law before entering []his plea." Later in his affidavit, however, defendant asserted he "was in fact told to speak with an immigration lawyer about the

---

[1] Apparently, at the time defendant entered his guilty plea, he had been granted Deferred Action for Childhood Arrivals status, which does not confer lawful permanent residence status. Because defendant "had a card which permitted [him] to work," defendant believed he held a "green card," as he told the plea court. In his affidavit, defendant asserted his guilty plea made him "[in]eligible to adjust status with the rest of [his] family."

[2] Defendant did not distinguish his claims against his first and second plea attorneys.

A-1334-18T2

plea," but he "did not do so."  Defendant stated he "never spoke to any of [his] attorneys about the immigration status of [his] plea."

Defendant elaborated:

> I did not understand that by entering a guilty plea as a condition of entering into the [PTI] program that it would be as if I had ple[]d guilty to the offense and for immigration purposes I would have a conviction for a crime of moral turpitude on my record.  I thought that as I was going into the [PTI] program that once I completed the program and the charges were dismissed that I would not have a criminal record.

Ultimately, defendant asserted that had he known the immigration consequences of his guilty plea, he "would have either contested the case or sough[t] a plea to a disorderly person's offense with a period of probation even though [he] would have had a criminal record."

During oral argument before the court, PCR counsel advanced defendant's IAC claims against his plea counsel and contended defendant's guilty plea should be vacated "in the interests of justice" because the State no longer required defendants to plead guilty as a condition for admission to PTI for third-degree offenses.  Defendant addressed the court at the hearing, claiming "when my lawyer told me about the PTI [program] . . . he told me that once I complete the program, it [sic] was going to be dismissed, so I did not think anything like this would happen . . . ."  The State countered defendant's motion should be

A-1334-18T2

denied because the guilty plea condition was imposed pursuant to a "negotiated agreement" between the parties, and the State's policy at the time, which was "to enter PTI with a plea on these kinds of offenses."

Following argument, the PCR court, which had not entered defendant's guilty plea, denied relief. The court initially determined defendant's IAC claims were contradicted by his testimony during the plea hearing and his responses to the questions contained on the plea form. Citing our Supreme Court's decision in State v. Gaitan, the court recognized "an attorney must tell a client when removal is mandatory when consequences are certain." 209 N.J. 339, 380-81 (2012). But the PCR court concluded the plea court's "discussion with defendant during the hearing and defendant's answers to question seventeen on the plea form clearly indicate[d] he knew he could be deported if he pled guilty." The court emphasized the plea court "afforded [defendant] the opportunity to speak to an immigration lawyer concerning the consequences of his plea," but defendant declined to do so.

The PCR court also briefly addressed the factors enunciated by the Court in State v. Slater, 198 N.J. 145, 150 (2009),[3] and rejected defendant's argument

---

[3] In Slater, the Court espoused four factors a trial court must consider and balance when evaluating a motion to withdraw a guilty plea: "(1) whether the

that the pre-sentencing "interests of justice" standard under <u>Rule</u> 3:9-3(e) should apply here, where, defendant completed PTI. Instead, the court determined defendant failed to demonstrate "manifest injustice," which would otherwise warrant withdrawal of his plea following sentencing. <u>See</u> <u>R.</u> 3:21-1. Acknowledging the existence of a plea agreement (factor three) and defendant's IAC claim (factor two), the court found defendant failed to assert a colorable claim of innocence (factor one). Noting the matter only "goes back to 2015," the court found no prejudice to the State (factor four). This appeal followed.

In his merits brief, defendant raises the following points for our consideration:

POINT I

THE [PCR] COURT ERRED IN DENYING DEFENDANT'S PETITION TO VACATE [HIS] GUILTY PLEA AS A GUILTY PLEA IS NO LONGER REQUIRED FOR ADMISSION INTO [PTI].

---

defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." 198 N.J. at 157-58. "No single <u>Slater</u> factor is dispositive; 'if one is missing, that does not automatically disqualify or dictate relief.'" <u>State v. McDonald</u>, 211 N.J. 4, 16-17 (2012) (quoting <u>Slater</u>, 198 N.J. at 162).

POINT II

IN ADDITION TO VACATING THE GUILTY PLEA
AS A GUILTY PLEA IS NO LONGER REQUIRED
FOR ADMISSION INTO [PTI], THE GUILTY PLEA
SHOULD BE VACATED IN THE INTEREST OF
JUSTICE AND EQUAL PROTECTION.

In his reply brief,[4] defendant further contends:

POINT I

DEFENDANT[] ESTABLISHED A COLORABLE
CLAIM OF INNOCENCE IN TH[E] INSTANT
MATTER.

POINT II

AT THE TIME OF HIS GUILTY PLEA,
DEFENDANT[] WAS UNAWARE THAT HIS
GUILTY PLEA WOULD RESULT IN SEVERE
IMMIGRATION CONSEQUENCES.

Distilled to their essence, these arguments reprise two principal aspects of

defendant's contentions before the court: the State impermissibly required

defendant's guilty plea as a condition of his admission to PTI, and defendant's

plea attorneys were ineffective for failing to properly advise defendant about the

immigration consequences of his plea. The State maintains it did not "require"

---

[4] We have considered the contentions raised in defendant's reply brief because they elaborate on the arguments he raised in point II of his merits brief, without raising new issues. See State v. Smith, 55 N.J. 476, 488 (1970) (recognizing the impropriety of raising an argument for the first time in a reply brief).

A-1334-18T2

defendant's plea as a condition of his admission, but rather it accepted defendant's counteroffer to its probationary offer.

## II.

As stated, the court decided defendant's motion as a PCR petition and a motion to withdraw a guilty plea. In doing so, the court correctly recognized those applications are governed by two distinct legal criteria. See State v. O'Donnell, 435 N.J. Super. 351, 368 (App. Div. 2014).

## A.

We begin our analysis with the validity of the plea agreement that gave rise to defendant's guilty plea. At the time of the plea hearing in 2015, Guideline 4 to former Rule 3:28[5] provided: "Enrollment in PTI programs should be conditioned upon neither informal admission nor entry of a plea of guilt. Enrollment of defendants who maintain their innocence should be permitted unless the defendant's attitude would render pretrial intervention ineffective." See also State v. Randall, 414 N.J. Super. 414, 421 (App. Div. 2010) (generally

---

[5] As of July 1, 2018, Rule 3:28-5(b)(1) replaced former Rule 3:28. The relevant portion of the current Rule contains identical language to Guideline 4 of former Rule 3:28. Notably, the amended PTI rule only permits the State to condition a defendant's admission to the program on entry of a guilty plea under limited circumstances, including where the defendant is charged with a first or second-degree offense, or certain domestic violence offenses. See R. 3:28-5(b)(2). None of those circumstances is present here.

recognizing "the Prosecutor's Office erred in requiring defendant to plead guilty as a prerequisite for admission into PTI"). But, as we further observed in Randall, "the official comment to Guideline 4 also recognize[d] that defendants must assume some responsibility for their conduct in order for the program to be effective." Ibid.

In the present matter, the prosecutor who represented the State at the PCR hearing,[6] iterated that the policy of the Passaic County Prosecutor's Office (PCPO) at the time of defendant's guilty plea "was to enter PTI with a plea on these kinds of offenses." While not disclosed in the record, plea counsel may have been aware of the PCPO's policy and extended his counteroffer accordingly.[7] In that case, the State may have implicitly required defendant's guilty plea as a condition to admission to PTI.

Because the record is unclear, however, an evidentiary hearing is necessary to determine how the terms of the agreement came into existence, and what was disclosed to defendant about that process. Stated another way, did

---

[6] Another prosecutor represented the State at the time of defendant's guilty plea.

[7] During colloquy with counsel, the PCR court commented that defendant's initial plea attorney "has handled more of these cases than . . . any lawyer in Passaic County" in "twenty-some years, and basically . . . concentrates in the plea area."

defense counsel suggest to the State that defendant would plead guilty in exchange for admission to PTI, or was it tacitly understood that the only way defendant's admission would be sanctioned by the State was via a guilty plea? Absent a complete record, we cannot determine whether the plea agreement violated the then-existing PTI rule and caselaw. If the State required the plea-for-PTI condition, then the plea may constitute a legal error, requiring vacatur. However, if defendant, through counsel, extended the counteroffer at issue, the plea agreement was not inconsistent with the then-existing law. In any event, the validity of the plea agreement does not end our inquiry; we must then consider defendant's IAC claims.

B.

Where, as here, the PCR court has not conducted an evidentiary hearing, we review its legal and factual determinations de novo. State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018). To establish an IAC claim, a defendant must demonstrate: (1) counsel's performance was deficient; and (2) the deficient performance actually prejudiced the petitioner's defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting two-part Strickland test in New Jersey). Thus, to set aside a plea based on IAC, "a defendant must show that (i) counsel's assistance was not

'within the range of competence demanded of attorneys in criminal cases'; and (ii) 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'" State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)). In other words, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." O'Donnell, 435 N.J. Super. at 371 (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

In the present matter, if plea counsel recommended defendant accept an offer from the State to plead guilty as a condition of admission to PTI when, at that time, the PTI Guideline prohibited that requirement, defendant's initial plea counsel's performance might have been deficient. However, there could have existed strategic reasons for that advice. As PCR counsel postulates in his merits brief, defendant "seems to have ple[]d guilty to the accusation in order for him not to be formally charged with the [weapons] charges." Again, because the circumstances of the negotiations are not clear from the record, an evidentiary hearing is warranted on that basis. In that context, we consider defendant's claim that his plea counsel failed to advise him about the immigration consequences of his guilty plea.

In Padilla, the United States Supreme Court recognized "[o]ur law has enmeshed criminal convictions and the penalty of deportation." 559 U.S. at 365-66. When the removal consequence flowing from a charge is clear, "an attorney must tell a client when removal is mandatory." Gaitan, 209 N.J. at 380 (emphasis added) (citing Padilla, 559 U.S. at 369). On the other hand, if "the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen [defendant] that pending criminal charges may carry a risk of adverse immigration consequences." Padilla, 559 U.S. at 369; see also Gaitan, 209 N.J. at 381. Counsel's failure to adhere to these requirements constitutes deficient representation, satisfying the first prong of the Strickland/Fritz standard. See Padilla, 559 U.S. at 369; Gaitan, 209 N.J. at 380. Accordingly, "when counsel provides false or affirmatively misleading advice about the deportation consequences of a guilty plea, and the defendant demonstrates that he would not have pled guilty if he had been provided with accurate information, an [IAC] claim has been established." Gaitan, 209 N.J. at 351.

At the time defendant entered his guilty plea, the definition of "conviction" was established under the Immigration and Nationality Act (INA),[8] which provides:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where – (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.
>
> [8 U.S.C. § 1101(a)(48)(A) (emphasis added).]

As we recently observed, "where a defendant has neither acknowledged guilt, nor entered a guilty plea, successful completion of PTI would not constitute a 'conviction' under the INA." State v. L.G.-M., 462 N.J. Super. 357, 366 (2020), certif. denied, ___ N.J. ___ (2020) (citing Pinho v. Gonzales, 432 F.3d 193, 215-16 (3d Cir. 2005)). Notably, in Pinho, the Third Circuit held that where the petitioner's prior conviction had been vacated pursuant to a defect in the criminal proceedings, i.e., based on his IAC claim, the conviction no longer existed for immigration purposes. 432 F.3d at 215. Ultimately, the petitioner

---

[8] Section 1101(a)(48)(A) became effective on September 30, 1996. Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, § 322(a)(1), 110 Stat. 3009, 628 (Sept. 30, 1996).

in Pinho was admitted to PTI without admitting guilt. Ibid. Where, however a defendant "has admitted sufficient facts to warrant a finding of guilt" – whether or not defendant has pled guilty in connection with a diversionary program – the INA's definition of "conviction" has been satisfied. See L.G.-M., 462 N.J. Super. at 366.

When defendant entered his guilty plea in 2015, the removal consequence of PTI with an admission of guilt was clear. Therefore, defendant's plea attorneys were required to inform defendant of that consequence. Gaitan, 209 N.J. at 380. Defendant's sworn assertions that plea counsel failed to advise him that his plea of guilty would lead to removal – even if he successfully completed PTI – warrant an evidentiary hearing, where the advice given by defendant's first plea counsel is not contained in the record and his second plea counsel stated during the plea hearing that "there may be negative ramifications" of defendant's guilty plea. (Emphasis added). See R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013); State v. Preciose, 129 N.J. 451, 462 (1992).

In that regard, we disagree with the PCR court's determination that defendant was aware of the immigration consequences of his disposition because the plea court had so informed him. We have previously "recognized the distinct roles of the trial judge and counsel." L.G.-M., 462 N.J. Super. at 368. A "judge's

18

statements may not be imputed to counsel.  The judge is obliged to ascertain that a plea is entered voluntarily . . . .  That obligation is related to, but distinct from the attorney's obligation to render effective assistance."  State v. Blake, 444 N.J. Super. 285, 297 (App. Div. 2016).

Moreover, the plea court here specifically stated it did not know the effect of "going into PTI with a guilty plea," then stated defendant should "assume the worst."  But, it was not the court's ultimate responsibility to advise defendant about the immigration consequences of his plea.  In any event, that advice was not accurate here, where removal was certain.

We are also convinced the record demonstrates a reasonable probability that but for his counsels' purported errors, defendant would not have pled guilty and would have gone to trial.  Putting aside defendant's admissions during his plea, it appears only he was a passenger in a car from which a paintball gun was shot by another.  Given the difficulties those circumstances would have presented to the State in proving beyond a reasonable doubt defendant's culpability, it would have been rational for him to reject the plea and proceed to trial if he had been properly advised his plea would result in his certain deportation and separation from his family.

19

We conclude defendant has established a prima facie case entitling him to a hearing regarding his plea counsel's advice. If at the remand hearing, defendant satisfies his claim that the advice given by either or both of his plea counsel fell below professional norms, the court must then consider whether defendant "demonstrate[d] that he would not have pled guilty if he had been provided with accurate information" from his plea counsel. Gaitan, 209 N.J. at 351; see also Lee v. United States, 582 U.S. ___, 137 S. Ct. 1958, 1965 (2017) (holding that, when a defendant pled guilty prior to trial based on incorrect advice from counsel about deportation consequences, the court must determine "whether the defendant was prejudiced by the 'denial of the entire judicial proceeding . . . to which he had a right.'") (quoting Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000)).

We express no view on the merits of any of defendant's contentions. We leave it the PCR court on remand to assess the credibility and reliability of defendant's contentions then apply the controlling legal principals we have identified to its factual findings. In view of our decision, we need not reach the court's Slater analysis.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1334-18T2