# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0389-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

K.H.,

     Defendant-Appellant.

_____

Submitted February 6, 2024 – Decided March 25, 2024

Before Judges Whipple and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 17-07-0529.

Helmer, Conley & Kasselman, PA, attorneys for appellant (Jack J. Lipari, of counsel and on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Milton Samuel Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant K.H.[1] appeals from the August 31, 2022 order denying his motion to withdraw his guilty plea as well as his petition for post-conviction relief (PCR) following an evidentiary hearing. We affirm, substantially for the reasons set forth in Judge Robert A. Kirsch's comprehensive written opinion.

I.

The circumstances of this matter are fully detailed in Judge Kirsch's fifty-two-page opinion. Therefore, we summarize only the salient facts. In November 2013, a Union County Grand Jury indicted defendant on the following charges: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(4); first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(3); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1); first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1); first-degree kidnaping, N.J.S.A. 2C:13-1(b)(2); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(12); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4); and

---

[1] We refer to defendant by initials to maintain the confidentiality of records that were sealed under Rule 1:38-11.

third-degree terroristic threats, N.J.S.A. 2C:12-3(b).

On May 15, 2018, defendant entered a negotiated guilty plea to first-degree kidnapping, an amended charge of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), and contempt of a domestic violence restraining order, N.J.S.A. 2C:29-9(b)(2). In exchange for his guilty pleas, the State agreed to recommend that defendant serve an aggregate thirteen-year prison term and that his remaining charges be dismissed.

At the plea hearing, defendant testified he understood the terms of his plea agreement and was aware if he was convicted at trial on the three charges to which he pled guilty, he would serve up to thirty years on the kidnapping charge, a maximum of eighteen months for the criminal sexual contact charge, and between six months and a year if convicted on the disorderly persons contempt charge.[2] He denied being under the influence of any substances or suffering from any mental health conditions and stated he had "[m]ore than enough" of "an opportunity to . . . speak about []his case with" plea counsel, and was

---

[2] During the plea hearing, the judge and counsel discussed whether the maximum exposure on the contempt charge was six months or a year, with the judge stating he understood the maximum term was six months. Thus, without objection of counsel, the judge asked defendant whether he understood he would serve a maximum sentence of between "six months to a year" if convicted of contempt. Defendant answered, "Yes."

satisfied with her representation.  Moreover, he testified he was "taking responsibility for a crime . . . [he] committed," and no one "pressured or threatened [him] with regard to []his plea[s]."

After defendant stated he reviewed discovery and discussed with plea counsel the "possible pre-trial motions" and "possible defenses" he could raise if he went to trial, as well as the consequences of pleading guilty, plea counsel represented she would withdraw defendant's pending "Miranda[3] [m]otion" once the judge accepted his guilty pleas.  When the judge asked defendant if he also understood by pleading guilty, he was "giving up all of the constitutional rights . . . [e]mbedded in [a] jury trial," including "the right to call [his] own witnesses[ and] the right to testify on [his] own behalf," defendant answered, "I understand."

Next, defendant provided a factual basis for his pleas.  He admitted that in "the early morning hours of May 13, 2017," he was with his former girlfriend, S.F.,[4] and kidnapped her by "unlawfully confin[ing] her for a substantial period of time . . . by taking her upstairs [to the warehouse] against her will and terrorizing her," and he "knew it was unlawful to" do so.  When asked by plea

---

[3]  Miranda v. Arizona, 384 U.S. 436 (1966).

[4]  The victim's initials are used to protect her privacy.  R. 1:38-3(c)(12).

A-0389-22

counsel if S.F. left the warehouse, "not because [defendant] . . . allowed her to," but "because . . . she, in fact, ran out of the [warehouse] and left to go to the hospital at that point," defendant answered, "Yes." He also admitted that when he held S.F. against her will, he "restricted her movements."

Regarding the criminal sexual contact charge, defendant admitted that during the same incident on May 13, 2017, he "grabbed [S.F.'s] breast and then ripped her shirt[,] knowing that [it] was [a criminal sexual contact] violation." Finally, as to the contempt charge, defendant testified that even though he was served with a domestic violence restraining order after the incident, prohibiting him from contacting S.F., he "contacted a third party to . . . contact [S.F.] to have . . . communication with her through this third party." When asked if he "knew that it was unlawful to use a third party to contact [S.F.]," defendant answered, "Yes." Accordingly, the judge found defendant provided "an adequate factual basis" for his guilty pleas and that they were entered "knowingly, voluntarily[,] and intelligently."

On July 12, 2018, Judge Kirsch sentenced defendant on the kidnapping charge to an eleven-year prison term (versus the thirteen-year term set forth in the plea agreement), subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The judge also imposed a concurrent one-year term on the criminal

sexual contact charge, and a concurrent time served sentence on the contempt charge.

Defendant appealed from his sentence. We affirmed, State v. Hernandez, No. A-0170-18 (App. Div. June 3, 2019), and the Supreme Court later denied his petition for certification, State v. Hernandez, 240 N.J. 28 (2019).

On February 3, 2022, defendant filed for PCR. He also moved to withdraw his plea and for dismissal of his indictment. In his PCR petition, defendant alleged plea counsel was ineffective because she pressured him into pleading guilty. Additionally, he asserted plea counsel was ineffective because she failed to: (1) secure records from the hospital where he was treated after the incident; (2) forcefully pursue an intoxication defense; (3) move to dismiss the indictment; (4) advise defendant he could present character witnesses at trial; and (5) argue for defendant to be sentenced in the second-degree range on his kidnapping charge.

On June 30, 2022, Judge Kirsch heard argument on defendant's applications. In response to defendant's claims about plea counsel's alleged ineffectiveness, the judge extensively recited portions of defendant's Mirandized statement to the police, which, as the judge noted, was provided hours after the incident. The judge observed that defendant told the police he "drag[ged S.F.]

6

by her hair," "took her clothes off," "really . . . hurt her," "pulled her hair," "assaulted her," "hit [S.F.,]" and "smacked her in . . . her face." Further, the judge recalled that before defendant entered his guilty pleas, the case "was so strenuously litigated from a defense standpoint, such that [he] remember[ed] it vividly," and "the lawyering . . . on both sides" was "exceptional."

Additionally, the judge found defendant's claim that he was pressured by plea counsel into pleading guilty did not "comport with [defendant's] extraordinary representations of embarrassment and shame" before the court, nor his request for "forgiveness" from S.F. The judge also found any claim that plea counsel pressured defendant into pleading guilty was "belied by [defendant's] . . . demeanor and what he said" at the plea hearing.

Following argument, Judge Kirsch granted defendant an evidentiary hearing but stated the hearing would address only the "discre[te] issue" related to defendant's contention that "he did not want to plead guilty but was pressured to do so." The judge stated plea counsel "should testify on this issue," and particularly address defendant's claim that one of the reasons he pled guilty was because plea counsel allegedly advised him Judge Kirsch stated he would sentence defendant to life if defendant was convicted at trial.

The evidentiary hearing proceeded on July 11, 2022. At the outset of the

A-0389-22

hearing, Judge Kirsch noted the May 13 incident was "memorialized," in part, in surveillance video from defendant's warehouse and that PCR "[c]ounsel cited this videotape over and [over] again in the PCR [petition] and in the . . . submission regarding the petition to withdraw the guilty plea." The judge also informed counsel that although he could not "be certain," he did not believe he viewed the videotape until the week before the evidentiary hearing. He explained that because "the videotape [was] referenced so many times and described to [him] so many times before the guilty plea and the sentencing, . . . at some point, [he] came to believe erroneously that [he] actually saw it" before asking the State to provide a copy of the video after the June 30 hearing. The judge also stated the footage was "directly related to . . . [defendant]'s contention that there was no kidnapping."

In response to the judge's comments, PCR counsel objected to the judge considering the warehouse footage. The judge asked how counsel could "object to something [PCR counsel] referenced over and [over] again." PCR counsel stated defendant previously informed him the judge "had seen the video in open court. That was [defendant's] recollection," to which Judge Kirsch replied, "[defendant] may be right." The judge also stated that whether he "saw [the videotape] three years ago or three minutes ago [wa]s irrelevant" because PCR

counsel "joined the . . . issue."

PCR counsel then asked if Judge Kirsch intended to have defendant testify. The judge stated he "would never force a [d]efendant . . . to take the witness stand," and having defendant testify would be PCR counsel's "choice." Further, the judge stated if defendant elected to testify, "the State c[ould] cross[-examine] . . . [d]efendant . . . to impeach his []credibility." However, the judge added that he would "not issu[e] an advisory [opinion] in terms of circumscribing what . . . cross-examination [would] look[] like." Notably, the judge also advised counsel he was "certainly not compelling [defendant] to testify" nor "depriv[ing] him" of that opportunity.

Once plea counsel took the stand, she testified the State's initial offer to defendant was to plead guilty to "one of the sexual assault[]" offenses and serve an eighteen-year term, subject to NERA. It later lowered its offer to fifteen years and was "ultimately . . . amenable to a [thirteen-]year sentence subject to NERA." Plea counsel further testified the State's offer would "not get[] any lower than [thirteen]."

Next, plea counsel denied telling defendant that if he refused the thirteen-year offer, Judge Kirsch told her he would sentence defendant to a life term. She stated, "I never said that. I would never use that type of terminology,"

9

adding, "Judge Kirsch never said that to me." On the other hand, plea counsel testified she and defendant discussed whether he should plead guilty or go to trial after she reviewed the nature and number of defendant's charges, as well as the evidence against him. She recalled the evidence included "photographs that were taken from the victim . . . at the hospital," and "most importantly[,] . . . the video that [she] . . . review[ed] on several occasions with [defendant] . . . as well as his family members." She testified "the evidence [against defendant], specifically the videotape [evidence], was very damning and damaging to the case." Accordingly, she informed defendant if he were convicted at trial, "his exposure would be what one may term to be life in prison," and at any rate, "higher than what [the State] offered [defendant] at the time of the plea."

Plea counsel further testified that if defendant "file[d] motions," any existing plea offer would be "off the table" due to the State's "elevating plea policies." Moreover, she denied pressuring defendant into pleading guilty, stating the decision to plead guilty was ultimately his because he knew "if he wanted to go to trial," she "would have been happy to get him a trial."

Next, plea counsel stated she consulted with experts to pursue a voluntary intoxication defense because shortly before the incident between defendant and S.F., "there w[ere] drinking activities." She concluded this defense was not

viable, due to the lack of medical records, a breathalyzer test, or other evidence to support it, and because the warehouse video and other video footage from the night of the incident did "not display[] any signs . . . to demonstrate that [defendant] was intoxicated" or that his level of intoxication supported "an intoxication defense that would negate the mens rea." Plea counsel also testified that after she reviewed the video of defendant's Mirandized statement, "he did not seem intoxicated in that video either."

On August 31, 2022, Judge Kirsch entered an order denying defendant's PCR petition and his motion to withdraw his guilty plea and dismiss the indictment. In the judge's accompanying written opinion, he painstakingly analyzed the evidence submitted to the court, including the statements defendant and S.F. gave to the police on May 13, 2017, the warehouse video, the victim's medical records, and the transcript from the grand jury proceedings. Additionally, the judge referenced defendant's testimony from his plea hearing and the statements defendant made at sentencing, "express[ing] genuine horror and remorse for his actions."

Judge Kirsch found "the record contain[ed] overwhelming proof of [defendant]'s guilt" and that defendant's claim that plea counsel pressured him into entering guilty pleas lacked merit. Judge Kirsch noted defendant

11

"testified . . . he understood that the decision to plead guilty was his" and "he was pleading guilty to the offenses because he[,]in fact[,] was guilty[] and . . . nobody . . . pressured or threatened him into pleading guilty." Further, the judge credited plea counsel's testimony from the "evidentiary hearing that she applied no pressure whatsoever on [defendant] regarding whether to plead or not, and that she was ready, willing, and able to vigorously defend [him] at trial."

Next, the judge thoroughly analyzed and rejected defendant's claims of ineffective assistance of counsel (IAC) under the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). Quoting State v. Gaitan, 209 N.J. 339, 350-51 (2012), the judge observed "the Strickland standard applies with equal force to assertions of [IAC] associated with the entry of guilty pleas."

Judge Kirsch also found defendant's claim that plea "counsel was ineffective for failing to file a motion to dismiss" was "without merit." The judge stated, "[t]he evidence adduced before the grand jury was sufficient to establish a prima facie case that [defendant] committed the charged crimes" "and [defendant] . . . failed to demonstrate that a motion to dismiss the indictment would have been successful."

Regarding defendant's motion to withdraw his guilty pleas, the judge examined each of the four factors set forth in State v. Slater, 198 N.J. 145, 150

12

(2009)[5] and found the factors militated against withdrawal. The judge also rejected defendant's claim that defendant provided an insufficient factual basis during his plea hearing "to support a first-degree kidnapping conviction," finding defendant "explicitly admitted guilt to the . . . elements of first-degree kidnapping" by testifying he "unlawfully confin[ed] S.F. for a substantial period of time," took "her upstairs [to the warehouse] against her will and terroriz[ed] her," and "when he held S.F. against her will, he did not let her leave and he restricted her movements." Additionally, the judge noted that, during this incident, defendant "admitted to grabbing S.F.'s breast and ripping her shirt for his own sexual gratification despite knowing that she did[ not] want him to do so."

## II.

On appeal, defendant raises the following arguments:

POINT I

THE [TRIAL] COURT ERRED IN DENYING THE
PCR [PETITION] AND CONTEMPORANEOUS

---

[5] The four factors a trial court must consider in evaluating a motion to withdraw a guilty plea are: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Slater, 198 N.J. at 150.

A-0389-22

MOTIONS TO PERMIT WITHDRAWAL FROM THE GUILTY PLEA AND TO DISMISS THE INDICTMENT.

A. DEFENDANT RECEIVED [IAC], IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY STATE CONSTITUTION ON ACCOUNT OF COUNSEL'S FAILURE TO OBTAIN THE GRAND JURY TRANSCRIPT AND TO ADVANCE A MOTION TO DISMISS.

B. THE [TRIAL] COURT ERRED IN FAILING TO DISMISS THE INDICTMENT ON . . . DEFENDANT'S DIRECT CLAIM OF IMPROPRIETY IN THE GRAND JURY PRESENTATION.

C. THE [TRIAL] COURT ERRED IN DENYING DEFENDANT'S CLAIM THAT HE WAS PRESSURED INTO PLEADING GUI[]L[T]Y ESPECIALLY INASMUCH AS HIS ATTORNEY RENDERED ERRANT ADV[ICE] AS TO CONSEQUEN[C]ES, INCLUDING ADVICE THAT WAS INEFFECTIVE, IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I PARAGRAPH 10 OF THE NEW JERSEY STATE CONSTITUTION.

D. [PLEA] COUNSEL WAS CONSTITUTIONALLY DEFICIENT IN VIOLATION OF THE [SIXTH] AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, PARAGR[A]PH 10 OF THE

NEW JERSEY STATE CONSTITUTION, IN FAILING TO OBTAIN AND ULTILIZE DEFENDANT'S HOSPITAL RECORDS.

E.     THE [TRIAL] COURT ERRED IN DENYING RELIEF ON . . . DEFENDANT'S SIXTH AMENDMENT AND ARTICLE I, PARAGRAPH 10 [IAC] CLAIMS INASMUCH AS THEY RELATED TO INTOXICATION AS A DEFENSE AND OTHER PROBLEMS IN THE STATE'S CASE.

F.     THE [TRIAL] COURT ERRED IN DENYING RELIEF ON DEFENDANT'S SIXTH AMENDMENT AND ARTICLE I, PARAGRAPH 10 [IAC] CLAIMS INASMUCH AS THEY [R]ELATED TO CHARACTER WITNESSES.

G.     THE FACTUAL BASIS FOR THE GUILTY PLEA WAS DEFICIENT AND DEFENDANT RECEIVED ERRANT ADVICE AS TO CONSEQUENCES.

H.     THE [TRIAL] COURT ERRED IN THE WAY THAT IT HANDLED THE PCR PROCEEDING, INCLUDING, BUT NOT LIMITED TO, ITS EVIDENTIARY DETERMINATIONS AND ITS RESTRICTIVE AND COERCIVE HANDLING OF THE MATTER OF DEFENDANT TESTIFYING.

I.     THE LOWER COURT ABUSED ITS DISCRETION IN ITS APPLICATION OF THE

"SLATER" FACTORS AND IN DECLINING
TO VACATE THE GUILTY PLEA.

These arguments lack merit. R. 2:11-3(e)(2). We add the following comments.

Applications to withdraw a plea and claims of IAC, although often related, are distinct and must be analyzed separately, not only because they are governed by different rules, but also because they are judged under different standards and grounded in different clauses of the constitution. State v. O'Donnell, 435 N.J. Super. 351, 368-69 (App. Div. 2014). A motion to withdraw a plea is governed by the four-factor Slater test, while an IAC claim is governed by the two-prong test enunciated in Strickland. See ibid.

While a decision on a plea withdrawal motion is ordinarily reviewed only for an abuse of discretion, State v. Simon, 161 N.J. 416, 444 (1999), a court's failure to have analyzed the claim under the correct test will trigger de novo review, see Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (explaining the "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference"). Where a guilty plea is entered pursuant to plea negotiations, a defendant's burden becomes significantly heavier. State v. Huntley, 129 N.J. Super. 13, 18 (App. Div. 1974). Although a motion to withdraw a guilty plea

A-0389-22

"filed at or before the time of sentencing will be granted in the 'interest[] of justice,' . . . [a] post-sentencing motion[] must meet a higher standard of 'manifest injustice' to succeed." Slater, 198 N.J. at 156 (first quoting R. 3:9-3(e); then quoting R. 3:21-1).

We review the legal conclusions of a PCR court de novo, but generally defer to its factual findings when those findings are "supported by adequate, substantial[,] and credible evidence." State v. Harris, 181 N.J. 391, 415 (2004) (quoting Toll Bros. Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). We use a deferential standard when reviewing a trial court's denial of a PCR petition following an evidentiary hearing. State v. Pierre, 223 N.J. 560, 576 (2015). Our review "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013).

As Judge Kirsch observed, to succeed on a claim of IAC, a defendant must satisfy the two-prong test set forth in Strickland by a preponderance of the evidence. Gaitan, 209 N.J. at 350. Under the first Strickland prong, defendant must show counsel's performance "fell below an objective standard of reasonableness" and "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88.

Because a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Id. at 689 (citation omitted). "The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006) (citing State v. Marshall, 123 N.J. 1, 165 (1991)).

To satisfy the second prong of the Strickland standard, a defendant "must show that the deficient performance prejudiced the defense." 466 U.S. at 687. There must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Id. at 691.

In the context of a PCR petition challenging a guilty plea based on a claim of counsel's ineffective assistance, the second prong is established when the defendant demonstrates a "reasonable probability that, but for counsel's errors,

[the defendant] would not have pled guilty and would have insisted on going to trial." State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)); see also State v. McDonald, 211 N.J. 4, 30 (2012). But the defendant also is required to show a "decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

A petitioner must establish both prongs of the Strickland standard to obtain a reversal of the challenged conviction. 466 U.S. at 687; Nash, 212 N.J. at 542; State v. Fritz, 105 N.J. 42, 52 (1987). Therefore, failure to satisfy either prong of the Strickland standard requires the denial of a petition for PCR. 466 U.S. at 700.

Additionally, relevant to defendant's argument under Point I(H) that "the scope of the [PCR] hearing should have been broader" and "address[ed] defendant's] numerous other claims," we recognize a defendant is not automatically entitled to an evidentiary hearing by simply raising a PCR claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). To obtain an evidentiary hearing, a defendant must "demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." State v. Peoples, 446 N.J.

Super. 245, 254 (App. Div. 2016) (quoting R. 3:22-10(b)). The petitioner's claims "must be supported by 'specific facts and evidence supporting his [or her] allegations.'" Ibid. (quoting State v. Porter, 216 N.J. 343, 355 (2013)).

A defendant "must do more than make bald assertions that [they were] was denied the effective assistance of counsel. [A defendant] must allege facts sufficient to demonstrate counsel's alleged substandard performance." Porter, 216 N.J. at 355 (quoting Cummings, 321 N.J. Super. at 170).

Governed by these standards, we have no reason to disturb the August 31, 2022 order and affirm substantially for the reasons set forth in Judge Kirsch's thoughtful written opinion. In reaching this determination, we reject defendant's argument that Judge Kirsch improperly limited the scope of the evidentiary hearing. In fact, as Judge Kirsch implicitly found during the June 30 hearing, defendant was not entitled to an evidentiary hearing on most of his IAC claims (e.g., his claim plea counsel failed to inform him he could present character witnesses at trial) because he failed to establish a prima facie case of IAC under Strickland.

Similarly, we reject defendant's argument that he was coerced out of testifying at the evidentiary hearing. The record reflects the judge expressly told PCR counsel that he was "welcome to" "put [defendant] on the stand," but if

defendant exercised his right to testify at the hearing, he would be subject to cross-examination by the State. Further, the judge stated he "would never force a [d]efendant . . . to take the witness stand," and it would be "up to" PCR counsel to decide if defendant testified. In short, the judge did not improperly pressure defendant to not testify, but instead, alerted PCR counsel to the fact there might be consequences to defendant taking the stand.

Finally, we reject defendant's argument that the judge committed harmful error by asking the State to produce the warehouse video after the June 30 hearing and then referencing it in his decision. The record reflects the judge asked the State to produce this video believing he had seen it previously. Moreover, nothing in the record suggests PCR counsel objected to the judge considering this video until after the judge reviewed it and discussed it on the record in advance of the evidentiary hearing. We also do not ignore the fact PCR counsel told Judge Kirsch that defendant recalled the judge had seen the video previously, to which the judge responded, "he may be right." Further, the judge noted both PCR counsel and the State extensively referenced the video in their PCR and Slater arguments, and that the content of the video went to the heart of defendant's contention that he was not guilty of kidnapping.

Given that the video corroborated defendant's testimony during the plea hearing and that Judge Kirsch's August 31, 2022 opinion reflects he considered other substantial evidence of defendant's guilt before entering the challenged order—including statements defendant and S.F. made to the police, as well as photographs and medical records documenting S.F.'s injuries after the incident—we decline to conclude the judge's consideration of the video constitutes harmful error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION